No. 2013-1304

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

GIORGIO FOODS, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

L.K. BOWMAN COMPANY,
MONTEREY MUSHROOMS, INC.,
and MUSHROOM CANNING COMPANY,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in Case No. 03-CV-00286, Judge Timothy C. Stanceu.

**BRIEF OF APPELLANT GIORGIO FOODS, INC.**

Michael T. Shor
Sarah Brackney Arni

ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC  20004
(202) 942-5000
*Counsel for Giorgio Foods, Inc.*

April 18, 2014

# CERTIFICATE OF INTEREST
## PURSUANT TO FED. CIR. R. 47.4

Counsel for amicus Giorgio Foods, Inc. certifies the following:

1.      The full name of every party or amicus represented by me is:

Giorgio Foods, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

n/a

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

DiGiorgio Mushroom Corp.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Arnold & Porter LLP – Michael T. Shor, Sarah Brackney Arni, Claire E. Reade, Kwame Clement, Erum Mirza, Yohai Baisburd, YongSang Kim.

| | |
|---|---|
| April 18, 2014 | /s/ Sarah Brackney Arni |
| Date | Signature of counsel |
| | Sarah Brackney Arni |
| | Printed name of counsel |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................. iii

I.    STATEMENT OF RELATED CASES ..........................................1

II.   JURISDICTIONAL STATEMENT ...............................................2

III.  STATEMENT OF THE ISSUES ..................................................3

IV.  STATEMENT OF THE CASE ......................................................3

      A.    Introduction ........................................................................3

      B.    Statement of Facts ..............................................................4

           1.    The Preserved Mushroom Investigations and Antidumping Orders ................................................4

           2.    The ITC's Denial of CDSOA Distributions to Giorgio............13

      C.    Procedural History.............................................................18

V.    SUMMARY OF THE ARGUMENT ..........................................31

VI.  ARGUMENT..............................................................................33

      A.    Standard of Review ..........................................................33

      B.    The CIT Erred in Refusing to Permit Giorgio to Add a Statutory Claim On Grounds of Futility ..........................35

           1.    The Statute's Plain Language Does Not Permit Exclusive Reliance on the Response to the Petition Support Question ....36

           2.    *SKF* Construed the CDSOA Petition Support Requirement So As Not to Permit Exclusive Reliance on the Petition Support Requirement ..........................................38

3.    *Chez Sidney* Reaffirmed *SKF*'s Construction of the CDSOA And Made Clear that the ITC Must Consider the Entire Questionnaire Response ...........................................................44

4.    *Ashley* Does Not Undermine the Viability of Giorgio's Statutory Claim .........................................................................47

5.    No Other Grounds Exist to Deny Giorgio's Request to Add a Statutory Claim .........................................................................49

C.    Giorgio's Complaint States a Viable As-Applied First Amendment Challenge to the CDSOA's Petition Support Requirement under this Court's Precedents.................................................................................52

1.    The First Amendment Provides the Framework for Construing the CDSOA ...............................................................................55

2.    Giorgio's Second Amended Complaint States a Viable As-Applied First Amendment Claim...............................................57

VII.    CONCLUSION AND RELIEF REQUESTED...........................................59

# TABLE OF AUTHORITIES

## Cases

*Amoco Oil Co. v. United States*, 234 F.3d 1374 (Fed. Cir. 2000) ...........................34

*Ashley Furniture Industries, Inc. v. United States*, 734 F.3d 1306
(Fed. Cir. 2013) ........................................................................... *passim*

*Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668 (1996) .......................................55

*Bigelow v. Virginia*, 421 U.S. 809 (1975) .................................................53

*Burson v. Freeman*, 504 U.S. 191 (1992) ...................................................56

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ..................... 55, 57

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................... 33, 34

*Giorgio Foods, Inc. v. United States ("Giorgio I")*, 515 F. Supp. 2d 1313
(CIT 2007) .........................................................................................23

*Giorgio Foods, Inc. v. United States ("Giorgio II")*, 755 F. Supp. 2d 1342
(CIT 2011) .........................................................................................26

*Giorgio Foods, Inc. v. United States ("Giorgio III")*, 804 F. Supp. 2d 1315
(CIT 2011) ............................................................... 2, 28, 36, 49

*Giorgio Foods, Inc. v. United States("Giorgio IV")*, 898 F. Supp. 2d 1370
(CIT 2013) ......................................................................... *passim*

*Intrepid v. Pollock*, 907 F.2d 1125 (Fed. Cir. 1990) ...................................... 33, 34

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*,
464 F.3d 1339 (Fed. Cir. 2006) ....................................................36

*Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860
(Fed. Cir. 1985) ...............................................................................49

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v.
Michigan Gaming Control Bd.*, 172 F.3d 397 (6th Cir. 1999) ...........................56

*Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001) .......................................57

*Miami Herald Publ'g Co. v. Tornilo*, 418 U.S. 241 (1974) ....................................56

*Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757 (Fed. Cir. 1988)....................49

*Perry v. Sindermann*, 408 U.S. 593 (1972) ..............................................................56

*PS Chez Sidney LLC v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374
    (Fed. Cir. 2012) ...................................................................................... *passim*

*PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 442 F. Supp. 2d 1329
    (CIT 2006) ...................................................................................................20

*PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 558 F. Supp. 2d 1370
    (CIT 2008) ...................................................................................................20

*Puerto Rico Public Housing Admin. v. U.S. Dept. of Housing & Urban Dev.*,
    59 F. Supp. 2d 310 (D.P.R. 1999) .........................................................54

*R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992) .........................................56

*Regan v. Taxation with Representation of Wash.*, 461 U.S. 540 (1983) .................56

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995).... 55, 57

*Saarstahl AG v. United States*, 177 F.3d 1314 (Fed. Cir. 1999) .............................33

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) .............................................................. 55, 56-57

*SKF USA Inc. v. United States*, 451 F. Supp. 2d 1355 (CIT 2006) .........................22

*SKF USA, Inc. v. Customs & Border Protection*, 560 U.S. 903 (2010) .................51

*SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337
    (Fed. Cir. 2009) ...................................................................................... *passim*

*Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011) ................................................56

*Speiser v. Randall*, 357 U.S. 513 (1958) ......................................................... 55, 57

*United States v. Ford Motor Co.*, 463 F.3d 1286 (2006)........................................34

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000)................. 55, 56

*United States v. Salerno*, 481 U.S. 739 (1987)......................................................53

*United States v. Stevens*, 559 U.S. 460 (2010) ........................................53

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008)..........53

*Webster v. Doe*, 486 U.S. 592 (1988) ....................................................54

## **Statutes**

19 U.S.C. § 1675c (2000) ............................................................. *passim*

28 U.S.C. § 1295(a)(5)..................................................................2

28 U.S.C. § 1581(i) ......................................................................2

## **Administrative Determiniations**

*Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 56,613 (Oct. 22, 1998)..12

*Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 66529-01 (Dec. 2, 1998) ...........................................................................13

*Certain Preserved Mushrooms from Chile*, Inv. No. 731-TA-776, USITC Pub. No. 3144 (Nov. 1998)....................................................................4, 13

*Certain Preserved Mushrooms from China*, 63 Fed. Reg. 72,255 (Dec. 31, 1998)12

*Certain Preserved Mushrooms from China*, 64 Fed. Reg. 8308-01 (Feb. 19, 1999) ...........................................................................13

*Certain Preserved Mushrooms from China, India, and Indonesia*, Inv. No. 731-TA-776-779, USITC Pub. No. 3159 (Feb. 1999)................................................13

*Certain Preserved Mushrooms from India*, 63 Fed. Reg. 72,246 (Dec. 31, 1998) .12

*Certain Preserved Mushrooms from India*, 64 Fed. Reg. 8311-01 (Feb. 19, 1999) ...........................................................................13

*Certain Preserved Mushrooms from Indonesia*, 63 Fed. Reg. 72,268 (Dec. 31, 1998)..........................................................................12

*Certain Preserved Mushrooms from Indonesia*, 64 Fed. Reg. 8310-01 (Feb. 19, 1999) ..........................................................................13

*Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 40,782 (Aug. 3, 2001) ....................................................14

**Rules**

CIT Rule 15(a)(2)................................................................................ 33, 50

**Other Authorities**

New Oxford American Dictionary, Third Ed. (2010) ............................................37

Webster's Encyclopedic Unabridged Dictionary of the English Language (2001 ed.) ...................................................................................................37

## I.     STATEMENT OF RELATED CASES

No appeal in or from the same proceeding was previously before this Court

or any other appellate court.  This Court has issued three decisions regarding the

"petition support" eligibility requirement contained in the Continued Dumping and

Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C.

§ 1675c (2000):  *SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337

(Fed. Cir. 2009); *PS Chez Sidney LLC v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374

(Fed. Cir. 2012); and *Ashley Furniture Industries, Inc. v. United States*, 734 F.3d

1306 (Fed. Cir. 2013).

In addition, the following appeals currently pending in this Court also

involve constitutional and/or statutory challenges to the U.S. International Trade

Commission's ("ITC" or "Commission") application of the petition support

requirement:

- *Furniture Brands International, Inc. v. United States*, 2012-1059

- *Standard Furniture Manufacturing Co., Inc. v. United States*, 2012-1230

- *New Hampshire Ball Bearings, Inc. v. United States*, 2012-1246

- *Pat Huval Restaurant & Oyster Bar, Inc. v. U.S. Int'l Trade Comm'n*, 2012-1250, -1347

- *Schaeffler Group USA, Inc. v. United States*, 2012-1269

- *Tampa Bay Fisheries, Inc. v. United States*, 2012-1419

## II.    JURISDICTIONAL STATEMENT

The Court of International Trade had jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i), because the CDSOA is a "law of the United States providing for . . . administration and enforcement with respect to" antidumping duties.  *See SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337, 1347 (Fed. Cir. 2009).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(5).  *See id.* at 1349.

On March 6, 2013, the Court of International Trade entered a final order dismissing all claims in Giorgio's Second Amended Complaint, including Giorgio's as-applied constitutional claim that the ITC's construction and application of the support requirement in Giorgio's case violated the First Amendment.  *Giorgio Foods, Inc. v. United States*, 898 F. Supp. 2d 1370 (CIT 2013).  Giorgio also appeals the CIT's November 17, 2011 interlocutory order denying Giorgio's motion to amend its Complaint to add an "APA/Statutory Violation" claim, asserting that the ITC's construction and application of the support requirement in Giorgio's case violated the statute.  *Giorgio Foods, Inc. v. United States*, 804 F. Supp. 2d 1315 (CIT 2011).

Giorgio filed a timely notice of appeal on April 3, 2013.

## III. STATEMENT OF THE ISSUES

(1)     Is the CDSOA's eligibility requirement that a producer must "indicate support of the petition by letter or through questionnaire response" satisfied where the applicant's confidential questionnaire response *as a whole* shows support, and the applicant actively supported the petition through other actions, but its answer to one abstract question that must be made public, does not state "support"?

(2)     If, as this Court held explicitly in *SKF*, the CDSOA may not be construed, consistently with the First Amendment, as permitting benefits to be *awarded* based solely on an applicant's having checked the "support" box on the ITC questionnaire, without more, may the statute constitutionally be construed as permitting benefits to be *denied* based solely on an applicant's having checked the "take no position" or "oppose" box, without consideration of the remainder of the applicant's questionnaire response or the actions it had taken in support of the petition?

## IV. STATEMENT OF THE CASE

### A.     Introduction

This case concerns the now-repealed Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c (2000), which provided a cash benefit to domestic producers in successful trade remedy proceedings that "indicate support of [an antidumping or countervailing duty] petition by letter or through questionnaire response." It raises issues not previously

considered by the Court, due to the unusual posture of plaintiff-appellant Giorgio

Foods, Inc. ("Giorgio") as a domestic producer that actively and financially

supported a petition and petitioners behind-the scenes and confidentially, but chose

not to do so publicly.

### B.    Statement of Facts

#### 1.    The Preserved Mushroom Investigations and Antidumping Orders

On January 6, 1998 -- years before Congress enacted the CDSOA -- the *ad

hoc* Coalition for Fair Preserved Mushroom Trade ("the Coalition") and several

individual producers filed an antidumping petition with the U.S. Department of

Commerce ("Commerce") and the ITC alleging dumping of imported preserved

mushrooms from Chile, China, Indonesia, and India.[1] JA0071-JA0072 (Second

Am. Compl. ("SAC") ¶ 26).[2] The petitioners consolidated their request for four

---

[1] Preserved mushrooms include mushrooms that are packed and heated in containers, including, but not limited to, cans or glass jars, in a suitable liquid medium. *Certain Preserved Mushrooms from Chile*, Inv. No. 731-TA-776, USITC Pub. No. 3144, at 4 (Nov. 1998) (Final). Preserved mushrooms do not include fresh and chilled mushrooms, dried mushrooms, frozen mushrooms, and marinated, acidified, or pickled mushrooms. *Id.*

[2] Giorgio originally filed its Second Amended Complaint, on June 7, 2011, under seal, as it contained both Giorgio's confidential business information as well as confidential information from third-parties. CIT Dkt. No. 150-1 (public); CIT Dkt. No. 151 (confidential). Due to the passage of time, Giorgio no longer seeks confidential treatment for its information. On January 24, 2014, Giorgio filed an updated public version of its Second Amended Complaint with this Court, redacting only confidential information from third-parties. ECF No. 30.

antidumping investigations in a single petition, and the ITC handled the injury

investigation as a single, combined investigation.

Plaintiff-appellant Giorgio is the single largest domestic U.S. producer of

preserved mushrooms, itself accounting for roughly one-half of total U.S.

production -- both currently and at the time the petition was filed.  JA0067 (SAC

¶ 9).  For preserved mushrooms, it constitutes about half of the U.S. domestic

industry.  *Id.*

Giorgio was not a named petitioner, but it had supported the petitioners and

the filing of the petition behind the scenes.  JA0071-JA0076 (SAC ¶¶ 26-42).  For

all practical purposes, Giorgio was a latent petitioner.  *Id.*  As it pled in great

detail,[3] Giorgio actively and financially supported the petitioners and the petition,

but Giorgio did not want to be associated with the petition publicly.  *Id.*

Prior to the filing of the petition, the Coalition had approached Giorgio

regarding their proposed petition.  JA0073 (SAC ¶ 32).  Giorgio agreed to provide

non-public support for the petition.  *Id.*  Giorgio had "numerous conversations with

Petitioners' counsel and representatives of the Coalition" to assist them with

putting together their case.  JA0073 (SAC ¶ 32).  Giorgio also agreed to provide

---

[3] Because the CIT disposed of this case on a motion to dismiss, the factual
references that follow refer to facts as pled by Giorgio in its complaint.

financial support for the petition, committing in October 1997 to contribute

$100,000 toward the legal fees incurred by Petitioners. JA0073 (SAC ¶ 33).[4]

Giorgio next entered into a confidentiality agreement with Petitioners'

counsel, two months prior to the filing of the petition, for the purpose of providing

Giorgio's sensitive business information to Petitioners' counsel for use in crafting

the petition. JA0074 (SAC ¶ 35). "This agreement provided a framework whereby

Giorgio could privately support Petitioners' efforts while avoiding any public

linkage to the petition." *Id.*

Pursuant to this agreement, prior to the filing of the petition, Giorgio

provided Petitioners' counsel with highly confidential information regarding

Giorgio's capacity, production, sales, pricing, and profitability, including detailed

data regarding its preserved mushroom operations, as well as data regarding lost

sales and idled/eliminated production lines due to low-priced imports from China,

Chile, Indonesia, and India. JA0074-JA0075 (SAC ¶¶ 36-37). Petitioners' counsel

had requested these data form Giorgio to prepare the petition and to develop

Petitioners' case strategy. JA0074-JA0075 (SAC ¶ 36). In addition, Giorgio

---

[4] Giorgio contends that, through September 2006, it contributed over $1 million for legal fees incurred by the Petitioners. JA0074 (SAC ¶ 34). On information and belief, Giorgio has paid more of the legal fees for the petition and subsequent proceedings (including reviews) than any of the petitioners. *Id.*

provided numerous attachments detailing the downward trend of U.S. prices to assist Petitioners in making their injury case. JA0075 (SAC ¶ 37).

Petitioners in fact used information provided by Giorgio in their petition. JA0076 (SAC ¶¶ 40-42). For example, the petition highlighted the closure by Giorgio in June 1997 of its No. 10 (68 ounce) size preserved mushroom line and Giorgio's resulting trade adjustment assistance claim as evidence of the adverse impact low-priced subject imports were having on domestic producers. JA0076 (SAC ¶ 42). Giorgio had supplied this information to Petitioners' counsel in support of the petition. *Id.*

Even though Giorgio was the largest U.S. domestic producer of preserved mushrooms, Giorgio's participation as a public petitioner was not necessary to the successful prosecution of the case, as the existence of the antidumping orders demonstrates. Indeed, Giorgio took great care to make sure that the public petitioners met the antidumping statute's standing requirements before deciding not to join as a petitioner. JA0075 (SAC ¶ 39). Based on information obtained from Petitioners' and their counsel, Giorgio knew that there was sufficient domestic support for Commerce to initiate all four investigations, and for Petitioners to establish standing, without the inclusion of Giorgio as a petitioner or party supporting the petition. *Id.* Giorgio therefore understood that any viewpoint

7

it expressed in response to the petition support question would not affect the outcome of the Commerce or ITC investigations. *Id.*

After the ITC initiated its investigation, Giorgio responded fully to both the preliminary and final phase questionnaires from the ITC.[5] JA0077 (SAC ¶ 45). Giorgio provided all factual information requested by the ITC. *Id.*

In its Second Amended Complaint, upon which the CIT based its judgment dismissing the case, Giorgio specifically pled that its questionnaire responses "as a whole supported the petition, including specific injury allegations contained in the petition." JA0077-JA0078 (SAC ¶ 47). Giorgio explained that its questionnaire responses "substantiat[ed] . . . injury-related allegations contained in the petition and otherwise provid[ed] data, information, and comments in support of the petition." JA0072 (SAC ¶ 29).

For example, Giorgio alleges that the petition claimed that U.S. prices were declining as a result of low-priced imports, and Giorgio's questionnaire responses included detailed information showing such decline in Giorgio's prices. JA0078 (SAC ¶ 47). The petition alleged that the domestic industry was losing sales to low-priced imports, and Giorgio's questionnaire responses identified specific domestic sales that it had lost because of low-priced imports. JA0078 (SAC ¶ 48).

---

[5] The ITC issued one questionnaire in each of these two phases of its investigation, covering all four countries at issue.

Giorgio's questionnaire responses "documented that its net sales to retail customers had decreased 21 percent" in the three years prior to the petition "*due to competition from low-priced imports*" and that its "sales of No. 10 (68 ounce) size preserved mushrooms had decreased 80 percent." *Id.* (emphasis added). Giorgio also alleged that it supported the petition's allegations of lost revenues, providing detailed information on its own lost revenues "due to low-priced imports." JA0078 (SAC ¶ 49). Moreover, Giorgio pled that "throughout its questionnaire responses, Giorgio repeatedly asserted that it had been injured by low-priced imports." JA0078 (SAC ¶ 51).

Giorgio's questionnaire responses showed support for the petition in other ways as well. Giorgio alleged specifically that its questionnaire responses contained statements "that would be made only by a producer actually supporting a petition. They are not statements that would be made by one opposing a petition." *Id.* Giorgio's Second Amended Complaint provided concrete examples from Giorgio's questionnaire responses:

- "Due to the extremely low and prevailing depressed prices for preserved mushrooms, Giorgio Foods, Inc. was forced to discontinue production of its line of [No. 10 size] 68 oz. preserved mushrooms during the fiscal year ended 10/03/97." JA0078-JA0079 (SAC ¶ 51(a)).

- "Since discontinuing production of its line of [No. 10 size] 68 oz. preserved mushrooms *due to imported preserved mushrooms,* Giorgio Foods, Inc. was forced to close one of its two production facilities. . . . Giorgio has also decreased production of preserved

mushrooms at its other facility and has found it necessary to layoff numerous employees." JA0079 (SAC ¶ 51(b)) (emphasis added).

- "The affect [*sic*] of current and continued eroding profits *due to extremely low and depressed prices caused by imported mushrooms,* will make future plans for expansion and banking requests more difficult to obtain." JA0079 (SAC ¶ 51(c)) (emphasis added).

- "If the *low price import situation* continues as it has for the last several years, we anticipate a continuing significant loss of processed mushroom business." JA0079 (SAC ¶ 51(d)) (emphasis added).

Nevertheless, in response to a solitary question in each questionnaire asking "Do you support or oppose the petition?", Giorgio expressed an opinion that it took no position with respect to Chile, China, and Indonesia, and that it opposed with respect to India.[6] JA0077 (SAC ¶ 45). Giorgio expressed these opinions, and supported the petitions and petitioners behind the scenes but not publicly, for business reasons largely unrelated to the U.S. domestic market and having nothing to do with the issue of whether it was being injured by reason of unfairly traded

---

[6] Giorgio did not actually check off any of the boxes, but instead wrote that it "take[s] no position on Chile, China and Indonesia" and that it "oppose[s] the petition against India." JA0152 (preliminary questionnaire); *see also* JA0189 (final questionnaire).

imports.[7]  Giorgio was not affiliated with any of the foreign producers covered by

the antidumping orders.  JA0190 (Giorgio's final questionnaire).

In addition to pleading that its questionnaire responses as a whole supported

the petition, and detailing how it had supported the petitions and the petitioners

even before the filing of the petition, Giorgio's Second Amended Complaint

identifies additional actions Giorgio took to provide substantial, active support for

the petition *after* its filing, during the course of the ITC's injury investigation.

JA0077 (SAC ¶¶ 43-44); JA0079-JA0080 (SAC ¶¶ 52-54).

For example, on January 21, 1998, Giorgio voluntarily hosted two ITC

staffers and Petitioners' counsel for a day-long field visit.  JA0077 (SAC ¶ 43).

Giorgio also worked with Petitioners' counsel to prepare for this visit.  *Id.*  During

the visit, Giorgio took the ITC investigators and Petitioners' counsel on a tour of

the closed production line.  *Id.*  Giorgio explained to the investigators that it had

been forced to close the line due to the influx of low-priced preserved mushroom

imports -- supporting the allegations that Petitioners had made.  *Id.*  On January 22,

1998, Giorgio sent additional information to one of the ITC investigators regarding

the Chinese market and Giorgio's line shutdown, which had been topics of

---

[7] For example, a Giorgio affiliate imported preserved mushrooms from Indonesia
to Europe, and thus Giorgio did not want its support of the petition to be public so
as to potentially jeopardize that business relationship.  JA0100-JA0101 (First Am.
Compl. ¶¶ 26-28).

discussion during the field visit. JA0077 (SAC ¶ 44); JA0223-JA0227 (letter to ITC).

Equally importantly, Giorgio took no actions to oppose the petitions or Petitioners' trade enforcement efforts at any time during the ITC's investigation. JA0079-JA0080 (SAC ¶ 54). "Giorgio did not testify, present any evidence, or present any brief in opposition to the petition at the January 27, 1998 preliminary phase Staff Conference, at the Commission's October 16, 1998 final phase public hearing, or otherwise." *Id.*

As noted, in sum and substance, Giorgio's Second Amended Complaint pled that it acted for all practical purposes as a latent petitioner. As it pled, "Giorgio supported the petition through these actions privately and confidentially, as it did not want to identify itself publicly as behind the petition." JA0072 (SAC ¶ 29).

On October 22, 1998 and December 31, 1998, Commerce published its final determinations in the four preserved mushroom antidumping investigations. It found dumping with respect to imports from each of the four countries.[8] On November 25, 1998, the ITC published its determination that the U.S. domestic

---

[8] *Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 56,613 (Oct. 22, 1998) (final LTFV determination); *Certain Preserved Mushrooms from China*, 63 Fed. Reg. 72,255 (Dec. 31, 1998) (final LTFV determination); *Certain Preserved Mushrooms from Indonesia*, 63 Fed. Reg. 72,268 (Dec. 31, 1998) (final LTFV determination); *Certain Preserved Mushrooms from India*, 63 Fed. Reg. 72,246 (Dec. 31, 1998) (final LTFV determination).

industry was materially injured by reason of dumped imports of preserved

mushrooms from Chile.[9]  On February 12, 1999, the ITC published its

determination that the domestic industry was materially injured by reason of

dumped imports of preserved mushrooms from China, Indonesia, and India.[10]  The

ITC explicitly included Giorgio in its definition of the domestic industry found to

be injured by dumped imports.[11]  JA0081-JA0082 (SAC ¶¶ 59-61).

As a result of the ITC's final affirmative injury determinations and

Commerce's final determinations of dumping, Commerce, on December 2, 1998

and February 19, 1999, entered separate antidumping orders against imports of

preserved mushrooms from China, Chile, Indonesia, and India.[12]

### 2.    The ITC's Denial of CDSOA Distributions to Giorgio

Over 18 months later, on October 28, 2000, the CDSOA was signed into

law.  It established a mechanism to distribute duties assessed and collected under

---

[9] *Certain Preserved Mushrooms from Chile*, Inv. No. 731-TA-776, USITC Pub. No. 3144 (Nov. 1998) (Final).

[10] *Certain Preserved Mushrooms from China, India, and Indonesia*, Inv. No. 731-TA-776-779, USITC Pub. No. 3159 (Feb. 1999) (Final).

[11] *Certain Preserved Mushrooms from Chile*, Inv. No. 731-TA-776, USITC Pub. No. 3144, at 8 (Nov. 1998) (Final); *Certain Preserved Mushrooms from China, India, and Indonesia*, Inv. No. 731-TA-776-779, USITC Pub. No. 3159, at 5 (Feb. 1999) (Final).

[12] *Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 66529-01 (Dec. 2, 1998); *Certain Preserved Mushrooms from China*, 64 Fed. Reg. 8308-01 (Feb. 19, 1999); *Certain Preserved Mushrooms from Indonesia*, 64 Fed. Reg. 8310-01 (Feb. 19, 1999); *Certain Preserved Mushrooms from India*, 64 Fed. Reg. 8311-01 (Feb. 19, 1999).

an individual antidumping duty order to "affected domestic producer[s]" ("ADP"), defined as "(A) a petitioner or interested party in support of the petition with respect to which an antidumping duty order . . . or a countervailing duty order has been entered, and [which] (B) remains in operation." 19 U.S.C. § 1675c(b)(1) (2000). Under the statute, to qualify as an interested party in support of the petition, a domestic producer must "indicate support of the petition by letter or through questionnaire response." 19 U.S.C. § 1675c(d)(1) (2000). This is the "petition support" eligibility requirement.

The ITC creates and maintains a list of CDSOA-eligible producers, and U.S. Customs and Border Protection ("CBP"), formerly the U.S. Customs Service ("Customs"), utilizes the list to determine distributions. *Id.* CBP, in turn, annually publishes a notice of intent to distribute duties for the soon to be completed fiscal year. *See*, *e.g.*, *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 40,782 (Aug. 3, 2001) (Fiscal Year 2001 notice). The notice invites affected domestic producers to apply for disbursements of antidumping and countervailing duties finally assessed in the fiscal year by submitting certifications of eligibility and eligible expenditures. *Id.*

On October 2, 2001, pursuant to the first such notice, Giorgio filed with both Customs and the ITC certifications for CDSOA distributions for Fiscal Year 2001, for three of the preserved mushrooms antidumping duty orders (Indonesia, Chile,

and China). JA0083 (SAC ¶ 67); JA0228-JA0240 (letter with attached

certification). In addition, by that letter, Giorgio asked the ITC to modify its list of

affected domestic producers to include Giorgio, so that Giorgio would be eligible

for disbursements under the Byrd Amendment. JA0229.

In that year, as well as in subsequent years, Giorgio presented evidence to

the ITC of its support of the petitions during the underlying ITC injury

investigation in its letter to the ITC, including many of the facts outlined above, in

the form of a declaration from John Majewski, Giorgio's then-President  JA0084

(SAC ¶ 69); JA0235-JA0240 (Majewski Declaration). Giorgio also asserted that

conditioning the distribution of CDSOA benefits on the position that Giorgio

expressed in the public proceedings before the ITC violated the First Amendment.

JA0084 (SAC ¶ 69); JA0233 (statement of eligibility).

In 2001, Giorgio did not file a certification to receive distributions under the

antidumping duty order for India, because it believed it would have been futile to

do so at the time. JA0084 (SAC ¶ 70). Nonetheless, beginning in FY 2003,

Giorgio did file certifications relating to all four orders, JA0085 (SAC ¶ 78), and

has continued to do so.

On October 11, 2001, the ITC responded, stating that it would be

"inappropriate" to add Giorgio to the list of affected domestic producers

(1) because Giorgio had not waived confidential treatment of its position [ in

response to the support question ] in the underlying investigations, and (2) because of unexplained "troubling issues" regarding whether Giorgio supported the petition. JA0084 (SAC ¶ 71); JA0241 (letter).

On October 22, 2001, Giorgio replied, writing a letter to the ITC reaffirming that it waived confidentiality with respect to its responses to the petition support question, and that Giorgio believed its position was protected by the First Amendment. JA0084 (SAC ¶ 72); JA0242-JA0243 (letter). In the letter, Giorgio further stated its unequivocal support for the petitions relating to Indonesia, Chile, and China in this letter. JA0243.

On January 3, 2002, the ITC concluded that it was "inappropriate" to add Giorgio to the list of affected domestic producers, basing its decision solely on Giorgio's responses to the petition support question during the original investigation. JA0084 (SAC ¶ 73); JA0244-JA0248 (letter). The ITC did not address Giorgio's First Amendment contentions. JA0084 (SAC ¶ 73) The ITC did not consider or make factual findings concerning either Giorgio's questionnaire responses as a whole or the actions Giorgio had identified as showing its support for the petition. JA0085 (SAC ¶ 74).

On January 18, 2002, Customs denied Giorgio's request for CDSOA distributions for Fiscal Year 2001, based on the ITC's refusal to include Giorgio on the list of affected domestic producers. JA0085 (SAC ¶ 75); JA0249 (letter). The

ITC's determination rendered Giorgio ineligible to receive offsets for all subsequent fiscal years, in addition to FY 2001. JA0085(SAC ¶ 76). Even though Giorgio annually (with a couple of exceptions) has renewed its request to be added to the list of eligible domestic producers, and provides factual information to the ITC in support of its request, the ITC has refused to include Giorgio on the list of ADPs.

To date, Giorgio has not received any CDSOA distributions, although it has continued to apply for distributions by filing certifications and reiterating the facts detailed above. As of the time of Giorgio's filing of its Second Amended Complaint in 2011, Customs had made distributions for fiscal years 2001-2010. JA0085 (SAC ¶ 79). For fiscal years 2001 through 2005, with one exception,[13] Customs paid out all antidumping duties that were assessed, collected, and liquidated as of the end of the fiscal year. JA0086 (SAC ¶ 85). For those fiscal years, a total of $6,869,960 in CDSOA offsets were available for distribution; based on qualifying expenditures claimed by Giorgio and other preserved mushroom producers, Giorgio would have been entitled to receive roughly 59 percent of the total -- over $4 million. JA0087 (SAC ¶ 86).

---

[13] In 2004 and 2005, Customs withheld distributions from one producer, pending an audit of that producer's past and current claims. JA0086 (SAC ¶¶ 83-84).

For fiscal years 2006 through 2009, Customs began treating Giorgio as an affected domestic producer for purposes of calculating each producer's share of the CDSOA offsets, but it withheld Giorgio's share of the distributions. JA0087 (SAC ¶ 87). For those fiscal years, Customs withheld roughly $5,986,990 in CDSOA distributions pending resolution of Giorgio's claims. *Id.* Customs did not withhold any distributions for Giorgio in 2010; total distributions totaled roughly $1,718,827. JA0087 (SAC ¶ 88).

Customs continues to distribute antidumping duties relating to the four preserved mushroom orders. Customs did not withhold any distributions for Giorgio in fiscal year 2011; distributions totaled roughly $2,649,282. For Fiscal years 2012 and 2013, Customs again withheld Giorgio's share of distributions, totaling roughly $5,428,502. In total, Giorgio's share of CDSOA distributions for fiscal years 2001 to 2013 is more than $17 million. If Giorgio loses this case, its share goes to other domestic producers against which Giorgio competes.

### C.    Procedural History

Giorgio filed suit on May 23, 2003, challenging the ITC's refusal to include Giorgio on the list of affected domestic producers for the preserved mushroom antidumping orders. JA0113-JA0128 (Compl.). In its original complaint, Giorgio included three claims -- a statutory claim relating to Chile, China, and Indonesia; a First Amendment constitutional claim relating to Chile, China, and Indonesia, and

18

a separate First Amendment constitutional claim relating to India. JA0126-JA0127 (Compl. ¶ 44-49).

In its statutory claim, Giorgio alleged only that the ITC's determination not to include Giorgio as an affected domestic producer for the order relating to Chile, China, and Indonesia "was inconsistent with the Byrd Amendment, was not supported by substantial evidence and/or is otherwise not in accordance with law." JA0126-JA0127 (Compl. ¶ 45). This statutory claim thus did not include India. *Id.*

In its constitutional claims, Giorgio contended that the petition support requirement, to the extent it was based on the content of Giorgio's speech, *i.e.*, its opinion provided in response to the petition support question, violated the First Amendment. JA0127 (Comp. ¶¶ 47, 49).

In June and July 2003, Customs and the ITC filed with the CIT what they contended to be the full administrative record relating to Giorgio's challenge to the Byrd Amendment. CIT Dkt. Nos. 9-11. The only documents from the underlying injury investigation that the ITC included in the record were a couple of pages from Giorgio's two questionnaire responses. Specifically, the ITC included only the cover page and part of page 2 -- the page of the questionnaire that included Giorgio's response to the petition support question as to Chile, China, and Indonesia. CIT Dkt. No. 11, at 10; *see also* JA0244-JA0248 (1/3/02 ITC letter

with attached "pertinent pages" of questionnaires). The ITC did not include the entirety of Giorgio's questionnaire responses in the administrative record, CIT Dkt. No. 11, presumably because it had not considered anything other than the partial response to that one question.

On August 18, 2003, Giorgio moved to stay its case pending the outcome of dispositive motions in *PS Chez Sidney, L.L.C. v. U.S. International Trade Commission*, CIT Case No. 02-00635. CIT Dkt. No. 20. On October 10, 2003, the CIT granted the motion to stay. CIT Dkt. No. 27. The CIT issued a partial decision in *Chez Sidney* some three years later, on July 13, 2006, ruling that the CDSOA's petition support requirement violated the First Amendment. *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 442 F. Supp. 2d 1329 (CIT 2006). (The CIT did not at that time order any relief or issue a final judgment, which did not occur until June 17, 2008. *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 558 F. Supp. 2d 1370 (CIT 2008)).

On July 28, 2006, Giorgio sought a temporary restraining order to prevent Customs from disbursing CDSOA funds in future years pending the outcome of Giorgio's challenges to the petition support requirement. CIT Dkt. No. 30. The CIT denied the motion for temporary restraining order, but permitted Giorgio to re-file its motion for preliminary injunction, CIT Dkt. No. 32, which Giorgio did on August 9, 2006, CIT Dkt. No. 34.

On August 23, 2006, while the motion for preliminary injunction was pending, L.K. Bowman Company, Monterrey Mushrooms, Inc., and Mushroom Canning Company (collectively, "Defendant-Intervenors") and Sunny Dell Foods, Inc. moved to intervene in the action. CIT Dkt. No. 39. These other domestic producers of preserved mushrooms had been petitioners or members of the petitioning Coalition, and thus were all receiving CDSOA distributions under the four preserved mushroom antidumping orders, including Giorgio's claimed share.

On September 13, 2006, over Giorgio's objection, the CIT granted the motion to intervene, except as to Sunny Dell because Sunny Dell had refused to agree to provide a witness at the upcoming preliminary injunction hearing. CIT Dkt. No. 51, at 2.

In its brief and at the hearing, CBP advised the CIT that it would withhold the distributions to which Giorgio would be entitled as if it were included on the list of affected domestic producers, and not distribute such funds to the remaining, eligible domestic preserved mushroom producers (or to Giorgio, unless its appeal were successful). CIT Dkt. No. 58, at 2; *see also* CIT Dkt. No. 36-3, at 2-3 (Declaration of W. David Sims, stating that "CBP will withhold that portion of the annual distribution corresponding to plaintiff's alleged share pending a final decision in *PS Chez Sidney v. United States*."). Based in part on CBP's

undertaking, on September 22, 2006, the CIT denied Giorgio's motion for preliminary injunction. CIT Dkt. No. 58, at 2.

On October 12, 2006, Giorgio moved for leave to amend its complaint and filed a First Amended Complaint. CIT Dkt. No. 59. First, Giorgio sought to drop its statutory claim, which primarily had been premised on the original complaint's factual allegations relating to Giorgio's October 22, 2001 letter stating its unequivocal support for the petition relating to India, Chile, and Indonesia. *Id.* at 4. Giorgio had intended to argue that this letter constituted the requisite letter indicating support, which the ITC had understood. *See* JA0136, JA0146-JA0147 (ITC Motion to Dismiss).

Second, Giorgio proposed to add a claim that the petition support requirement violated the Equal Protection Clause, based on the CIT's intervening decision in *SKF USA Inc. v. United States*, 451 F. Supp. 2d 1355 (CIT 2006). CIT Dkt. No. 59, at 5. In that decision, the CIT had held that the CDSOA's petition support requirement violated the Equal Protection Clause.

Third, Giorgio sought to add a claim for unjust enrichment against the Defendant-Intervenors and Sunny Dell -- based on the CIT's statement in its decision denying Giorgio's request for a preliminary injunction that, if successful, Giorgio could recover funds previously disbursed to other domestic producers of preserved mushrooms. *Id.* at 5-6. Giorgio also sought to update its factual

allegations for developments since the original complaint was filed, making clear its action sought distributions for *all* years, including but not limited to fiscal years 2001 and 2002, and to modify the relief requested to reflect its new claims. *Id.* at 4-5.

On August 21, 2007, the CIT granted Giorgio's motion, except that it denied Giorgio's request to add claims against non-party Sunny Dell. *Giorgio Foods, Inc. v. United States ("Giorgio I")*, 515 F. Supp. 2d 1313 (CIT 2007).

On March 19, 2008, Defendant-Intervenors, with the agreement of Defendants, moved to stay Giorgio's claims in the CIT pending the outcome of the then-pending appeals to this Court of the CIT's decisions in *SKF* and *Chez Sidney*. CIT Dkt. No. 82. Giorgio opposed the stay in part, as the CIT had not even entered a final judgment in *Chez Sidney*, and Giorgio's case presented issues not included in either of the other cases. CIT Dkt. No. 83. On May 6, 2008, the CIT stayed all proceedings in Giorgio's case, pending a decision by this Court in either *SKF* or *Chez Sidney*. CIT Dkt. No. 84.

On February 19, 2009, this Court decided *SKF USA, Inc. v. U.S. Customs & Border Protection*, 556 F.3d 1337 (Fed. Cir. 2009), in which it addressed for the first time the constitutionality of the CDSOA's petition support requirement. That case, as the Court noted and relied upon, involved a claimant that not only had checked off the box indicating that it opposed the petition, but also had taken

numerous actions in the antidumping proceeding actively to oppose the petition, including through expert witness testimony, the filing of briefs, and through other information provided in its questionnaire response, arguing that there was no material injury to the domestic industry. *Id.* at 1358-59.

This Court rejected the government's core argument that the CDSOA did not implicate free speech, *id.* at 1351, and recognized that SKF's answer to the petition support question "is protected First Amendment activity," *id.* at 1354. To "save the statute" from unconstitutionality, the Court adopted an "alternative construction" of the CDSOA's purpose: "to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings." *Id.* at 1352. Turning to the language of the statute, the *SKF* Court held that the language "is easily susceptible to a construction that rewards actions (litigation support) rather than the expression of particular views." *Id.* at 1353. Under this construction, the CDSOA "only permit[s] distributions to those who actively supported the petition (*i.e.*, a party that did not more than submit a bare statement that it was a supporter without answering questionnaires or otherwise actively participating would not receive distributions)." *Id.* at 1353 n.26. This Court then noted that responding to an ITC questionnaire constitutes active participation in the proceeding. *Id.*

The Court then turned to claimant SKF's as-applied First Amendment and Equal Protection challenges. The Court recounted all of the actions that SKF took in the antidumping proceedings -- which it had identified by asking the ITC, after oral argument, to supply additional documents *beyond SKF's questionnaire response* from its investigation administrative record[14] -- and determined that the litigation-related actions that SKF had taken to oppose the petition actively overrode any support it had provided simply by completing the ITC's questionnaires. *Id.* at 1358-59. Actions expressly noted by the Court included presenting briefs and fact and expert testimony arguing that the petition should be denied and that the domestic industry was not materially injured. *Id.*

In light of the *SKF* Court's express reliance on the claimant's litigation support *actions*, on August 30, 2010, Giorgio filed a motion to complete the administrative record. CIT Dkt. No. 95 (public); CIT Dkt. No. 96 (confidential). Giorgio sought additional documents from the underlying injury investigation to assist Giorgio in demonstrating the active petition support in which it had engaged

---

[14] In *SKF*, this Court took the unusual post-argument step of requesting the ITC to supply it with additional, extra-record documents, so that it could examine the *actions* that SKF had taken in the antidumping proceeding (as distinguished from its response to the petition support question -- the only piece of "evidence" that the ITC had considered to be relevant). *See* Fed. Cir. Dkt. No. 2008-1005, Entry 99, Nov. 11, 2008, "Court's letter to the Intl Trade Commission requesting documents from the record of the underlying ITC proceedings in 303-TA-19, 20; and 731-TA-391-399."

during the investigation, and, further, that it had engaged in no actions (as distinguished from its expression of an abstract opinion) to oppose the petition. *Id.*

Over the objections of Defendants and Defendant-Intervenors, the CIT granted the motion on January 5, 2011. *Giorgio Foods, Inc. v. United States* *("Giorgio II")*, 755 F. Supp. 2d 1342 (CIT 2011). In so doing, the CIT ruled that the ITC incorrectly characterized its inquiry as "'mak[ing] one specific determination: . . . whether Giorgio was either a petitioner, or expressed actual support for the petition by letter or questionnaire response.'" *Id.* at 1347 n.8 (quoting ITC's Opposition brief). The CIT ruled that "[i]n order to determine those parties that answered questionnaires or otherwise actively participated, the ITC would necessarily have to consult the underlying investigations." *Id.* at 1348.

On June 7, 2011, Giorgio again moved to amend its complaint and filed its proposed Second Amended Complaint, which is at issue here. JA0065-JA0092. In light of this Court's decision in *SKF* construing *and limiting* the CDSOA not to award benefits based on the expression of particular viewpoints, to avoid constitutional infirmity, and thus rejecting SKF's facial constitutional challenges, Giorgio sought to drop its facial constitutional challenges. Also in light of *SKF*, and the additional record documents Giorgio had obtained following its motion to complete the record (including its full questionnaire responses), Giorgio added extensive new factual allegations. These new allegations included the facts

discussed above relating to the petition support indicated in its questionnaire response as a whole, additional support provided to the ITC during the investigation, and updated information regarding the amount of available distributions under the four preserved mushroom antidumping orders. JA0071-JA0087.

Based on *SKF* and these new facts, Giorgio also sought to add a new claim for an "APA/Statutory Violation," alleging that the ITC violated the CDSOA by considering only the answer to a single question, not considering the remainder of Giorgio's questionnaire responses, and not considering Giorgio's other actions in support of the petition. JA0089 (SAC ¶ 101). Unlike the original Administrative Procedure Act ("APA") claim Giorgio had abandoned, this new statutory claim related to all four countries at issue in the antidumping proceeding, involved newly-pled and thus different facts, and was based on this Court's intervening interpretation of the statute's intent as well as its new constructions of the statute's language -- including the constitutional limiting construction -- as contained in *SKF*. *Id.* It was an entirely new claim based on new facts and new law, and sought expanded relief.

On November 17, 2011, the CIT granted Giorgio's motion to drop its two facial constitutional challenges, under the First Amendment and the Equal

Protection Clause, but denied its motion to add its APA statutory claim.[15]  *Giorgio*

*Foods, Inc. v. United States ("Giorgio III")*, 804 F. Supp. 2d 1315 (CIT 2011)

(slip opinion attached at JA0001-JA0016).  The CIT stated, without explanation or

factual findings, that "Giorgio's new claim is not substantively different from its

previously abandoned claim."  *Id.* at 1322.  The CIT then held that "Giorgio's

attempt to add a new claim is futile since Giorgio specifically opposed the

antidumping petition with respect to India, and is therefore precluded from

asserting a CDSOA violation claim after *SKF*."  *Id.*

On July 13, 2012, this Court issued its second decision interpreting the

petition support provisions of the CDSOA.  In *PS Chez Sidney, L.L.C. v. U.S.

International Trade Commission*, 684 F.3d 1374 (Fed. Cir. 2012), the Court

addressed the circumstances of a domestic producer who had fully completed both

questionnaires, checking "support" on the preliminary phase questionnaire and

"take no position" on the final phase response to the petition support question, but

who otherwise had taken no actions indicative of support or opposition.  *Id.* at

1377, 1381.  Based on Chez Sidney's one abstract expression of a non-support

viewpoint alone, the ITC denied claimant Chez Sidney CDSOA distributions.  *Id.*

at 1377-78.  Because the plaintiff in *Chez Sidney* raised in its appeal only statutory

---

[15] Giorgio's motion, and the CIT's decision, addressed other requests, but Giorgio only appeals the denial of the leave to amend the complaint to add a statutory interpretation claim.

claims and did not pursue any constitutional claims, the *Chez Sidney* Court addressed only Chez Sidney's APA challenge to the ITC's interpretation of the statute. *Id.* at 1379.

The *Chez Sidney* Court did not abandon, but rather reaffirmed, the construction that the *SKF* Court had applied to the purpose and language of the CDSOA, noting once again that such construction was necessary to avoid constitutional infirmity under the First Amendment. *Id.* at 1380. The *Chez Sidney* Court reiterated that "it was necessary to limit the meaning of the term 'support' [in the petition support eligibility requirement] so that it would not include the mere abstract expression of support." *Id.* at 1381. The *Chez Sidney* Court also noted that the *SKF* Court had considered and balanced the support provided by claimant SKF in completing the questionnaires against SKF's action in opposition to the petition, concluding that the latter "outweighed the assistance it provided by responding the questionnaire." *Id.*

Like the *SKF* Court, the *Chez Sidney* Court too considered the full range of activities in which the claimant had engaged in the original ITC injury investigation. The Court thus held "that when a U.S. producer assists investigation by responding to questionnaires but takes no other action probative of support or opposition, the producer has supported the petition under § 1675c(d) and is eligible for distributions if it can otherwise make the required certification that it has been

injured." *Id.* at 1382.  The Court ruled expressly that it was "unreasonable" for the

ITC to "consider[] only the boxes Chez Sidney had checked [in response to the

petition support question] in making its decision." *Id.*

On October 16, 2012, the ITC, Customs, and Defendant-Intervenors filed

separate motions to dismiss Giorgio's remaining as-applied constitutional claims

(First Amendment and Equal Protection) for failure to state a claim upon which

relief may be granted.[16]  CIT Dkt. Nos. 180, 181, 182.

On March 6, 2013, the CIT granted the motions to dismiss.  *Giorgio Foods,*

*Inc. v. United States ("Giorgio IV")*, 898 F. Supp. 2d 1370 (CIT 2013) (slip

opinion attached at JA0017-JA0038).  The CIT's dismissal was based on solely on

what it deemed "[t]he controlling fact":  the viewpoint Giorgio expressed in

isolation, in both the preliminary and final phase investigations, in response to the

petition support question, that it took no position on the petition as to China, Chile,

and Indonesia and that it opposed the petition as to India.  *Id.* at 1378-79.  The CIT

neglected even to mention Giorgio's contention that its questionnaire responses as

a whole supported the petition.  *Id.* at 1379-80.  To the CIT, like the ITC, only one

question mattered.  The CIT also asserted that *Chez Sidney* was "not controlling of

---

[16] Defendant-Intevenors also moved to dismiss Giorgio's claims for restitution/
unjust enrichment for lack of subject matter jurisdiction.  The CIT granted this
motion, and Giorgio does not appeal.

the outcome" of Giorgio's case because Chez Sidney had raised only a statutory

challenge to the CDSOA. *Id.* at 1380-81.

Giorgio filed a timely notice of appeal on April 3, 2013. On May 1, 2013,

Giorgio filed an unopposed motion to stay this appeal pending this Court's

decision in the third case involving the CDSOA petition support requirement. On

August 19, 2013, this Court issued a decision in that appeal. *Ashley Furniture*

*Indus., Inc. v. United States*, 734 F.3d 1306 (Fed. Cir. 2013).

In this appeal, Giorgio appeals only (1) the denial of its motion for leave to

amend its complaint to add a new APA/Statutory Violation claim, and (2) the

dismissal of its as-applied First Amendment claim.

## V.   SUMMARY OF THE ARGUMENT

The ITC construes the CDSOA as requiring it to reveal publicly the names

of all domestic producers that check off a box in one question on its domestic

producer injury investigation questionnaire where respondents can opine that they

"support" the petition. Giorgio did not check off this box. Nonetheless, Giorgio

pled with specificity that it showed its support for the petition elsewhere in its

response and through other actions it took during the ITC's underlying

investigation. Indeed, Giorgio specifically pled that its "questionnaire responses *as*

*a whole* supported the petition." JA0077 (SAC ¶ 47) (emphasis supplied).

The ITC, however, construed its task under the CDSOA as limited to determining whether Giorgio had checked off the support box. The ITC did not even look at, much less consider, the remainder of Giorgio's response, which the ITC does not make public. If Giorgio had responded to every other question by writing "we support the petition," the ITC would not even have noticed. Likewise, the ITC did not consider any of the detailed evidence Giorgio had presented to it concerning other actions Giorgio had taken before and during the original investigation evidencing its support of the petition, which actions this Court has previously held must be considered. *SKF*, 556 F.3d at 1354 n.26; *Chez Sidney*, 684 F.3d at 1382-83.

Because the statute does not require Giorgio to have "indicate[d] support" for the petition in any specific question, or in any particular manner, and because this Court already has ruled that exclusive reliance on the one abstract opinion question is "unreasonable" as a matter of statutory construction, and also problematic under the First Amendment, the CIT erred in refusing to consider the entirety of Giorgio's questionnaire response and its other actions in support. The CIT's holding that Giorgio's expression of its opinion on one question was "[t]he controlling fact" in awarding this government benefit cannot be reconciled with this Court's decisions in *SKF* and *Chez Sidney*, the statute's plain language, or the

32

First Amendment's heightened protections of the expression of opinion on matters of public policy.

As this Court held in *SKF*, the CDSOA was intended to reward those who assisted the government's efforts to combat dumping, not to reward the expression of particular views. 556 F.3d at 1351-52. Necessarily, then, the ITC at a minimum should have considered the entirety of Giorgio's questionnaire response, and not Giorgio's one expression of a particular view, in isolation.

## VI.  ARGUMENT

### A.  Standard of Review

This Court reviews the CIT's denial of Giorgio's motion to amend its complaint, to add an APA statutory claim, for abuse of discretion. *See Saarstahl AG v. United States*, 177 F.3d 1314, 1320 (Fed. Cir. 1999) (citing *Intrepid v. Pollock*, 907 F.2d 1125, 1129 (Fed. Cir. 1990)). "[A] misinterpretation of the Rule [on amendment to pleadings] itself would constitute an abuse of discretion." *Intrepid*, 907 F.2d at 1129. Rule 15(a)(2) of the Rules of the Court of International Trade provides that "[t]he court should freely give leave [to amend the complaint] when justice so requires." "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). As the Supreme Court has further specified, leave to amend shall be given freely,

absent undue delay, bad faith, undue prejudice to the opposing party, or futility of amendment. *Id.*; *see also Intrepid*, 907 F.2d at 1128-29.

If there is no legally sound basis for the denial of the motion to amend, such denial is, accordingly, an abuse of discretion. *Intrepid*, 907 F.2d at 1129. Here, the CIT's determination that Giorgio's requested amendment was "futile" was based on that court's reading of *SKF*. An error in a matter of law underlying a futility determination constitutes an abuse of discretion. *See United States v. Ford Motor Co.*, 463 F.3d 1286, 1297 (2006).

This Court's "review of statutory and constitutional issues is de novo." *SKF*, 556 F.3d at 1349; *Ashley*, 734 F.3d at 1309 ("We review statutory interpretation by the CIT without deference. Constitutional interpretation is also a question of law, which we review *de novo*."). This Court thus reviews *de novo* the CIT's dismissal, for failure to state a claim, of Giorgio's as applied First Amendment claim. *Ashley*, 734 F.3d at 1309.

"On a motion to dismiss for failure to state a claim, any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff." *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000). Dismissal "is proper only when it is beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief." *Id.*

**B.**     **The CIT Erred in Refusing to Permit Giorgio to Add a Statutory Claim On Grounds of Futility**

As noted, after this Court's decision in *SKF*, Giorgio sought leave in 2011 to amend its complaint to add an "APA/Statutory Violation" claim, contending that the ITC's determination not to include Giorgio on the list of affected domestic producers with respect to the four preserved mushroom antidumping orders was "inconsistent with the CDSOA's statutory eligibility tests." JA0089 (SAC ¶ 100). Specifically, Giorgio's proposed amended complaint alleged that the ITC "considered only Giorgio's abstract expressions of viewpoint toward the petition on only one question in Giorgio's response" to the ITC's questionnaire. JA0089 (SAC ¶ 101). Under this claim, Giorgio also alleged that the ITC "also acted unlawfully, among other reasons, (1) in failing to consider the remainder of Giorgio's questionnaire responses, and (2) failing to consider actions Giorgio had taken in support of the petition, including all of the litigation and related petition support actions outlined" in the proposed amended complaint. *Id.* Giorgio specifically cited to *SKF* as support for its "APA/Statutory Violation" claim. *Id.*

As detailed above, this claim necessarily differed from the earlier statutory claim Giorgio had abandoned, which primarily relied on its October 2001 letter to the ITC indicating support, because it was based on newly-pled factual allegations,

relied upon the change in the law brought about by *SKF*, and sought expanded relief (including duties under the India antidumping order). [17]

In denying the motion to amend, the CIT determined that Giorgio's statutory claim with respect to India was futile, relying solely on Giorgio's response to the petition support question. *Giorgio III*, 804 F. Supp. 2d at 1322. Because the CIT erred in its underlying legal conclusion, the denial of the motion for leave to amend for futility was an abuse of discretion, and this Court should reverse.

Futility is judged by motion to dismiss standards, so all factual allegations are assumed to be true and all reasonable inferences are drawn in Giorgio's favor. *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006).

### 1. The Statute's Plain Language Does Not Permit Exclusive Reliance on the Response to the Petition Support Question

The CIT erred in concluding that Giorgio's responses to the petition support question were the controlling fact, and thus that Giorgio's failure to check the "support" box rendered its statutory claim futile. The statute's plain language, combined with prior constructions this Court imposed in *SKF* and *Chez Sidney* for both statutory and constitutional reasons, cannot support such a construction.

---

[17] As this case and others relating to the CDSOA progressed, however, it became clear that such a letter, sent after the underlying antidumping proceeding had concluded, was insufficient to satisfy the petition support eligibility requirement. This is why Giorgio had abandoned that claim.

By its plain language, the statute requires only that Giorgio "indicate support" "through questionnaire response." This is a broad requirement, that can be satisfied in any number of ways. Most importantly, the statutory language does not direct the ITC to consider only part of the questionnaire response or only the petition support question, and there is no language in the statute that could support any such construction. Indeed, if Congress had intended the ITC to rely on a single question, it could have tailored the requirement much more narrowly.

To "indicate" means to "to be a sign of," "evidence," or "show."[18] It is a much broader verb, encompassing a greater range of expression, than, for example the verb to "state." The statute's plain language does not require a producer to "state" support, much less to do so explicitly, or to use any particular magic words. It requires only that the producer, through the questionnaire response, show, evidence, or provide a sign of support -- *any* indication of support.

Accepting the factual allegations in Giorgio's Second Amended Complaint as true, Giorgio met the statute's basic requirement. Giorgio pled that its questionnaire responses "as a whole supported the petition, including specific injury allegations contained in the petition." JA0077-JA0078 (SAC ¶ 47). Giorgio alleged specifically that its questionnaire responses contained statements "that

---

[18] Webster's Encyclopedic Unabridged Dictionary of the English Language (2001 ed.) at 972; *see also* New Oxford American Dictionary, Third Ed. (2010), at 884 (defining "indicate" as "point out," "show," or "strongly imply").

would be made only by a producer actually supporting a petition.  They are not statements that would be made by one opposing a petition."  JA0078 (SAC ¶ 51). And, as detailed above, Giorgio provided concrete examples from its actual questionnaire responses.  JA0078-JA0079 (SAC ¶ 51).  All of these constitute indications of support for the petition, covering all four countries.

Unlike the claimants in *SKF* and *Ashley*, Giorgio pled that, apart from the petition support questions, *elsewhere* in its questionnaire responses, it had indicated support, and moreover, that its responses as a whole indicated support. The CIT erred and abused its discretion in ignoring these facts and relying exclusively on Giorgio's response to one question.

> **2.    *SKF* Construed the CDSOA Petition Support Requirement So As Not to Permit Exclusive Reliance on the Petition Support Requirement**

This Court's previous CDSOA decisions support Giorgio's plain language reading of the petition support eligibility requirement, and undercut the CIT's holding that Giorgio's response to the petition support question alone can be dispositive.

In *SKF*, which presented constitutional claims under both the First Amendment and the Equal Protection Clause, the Court began its analysis of the constitutional issues presented by noting its "well established obligation to construe statutes to avoid constitutional difficulties."  556 F.3d at 1349.  The *SKF*

Court ruled that a saving construction must be employed "even when the interpretation finds little support in the literal language of the statute." *Id.* at 1349-50.

The *SKF* Court thereby rejected the government's central argument -- that the petition support eligibility requirement presented no First Amendment issue at all. *Id.* at 1351 (rejecting the government's argument that the purpose of the CDSOA was to identify those producers suffering the greatest injury as "simply implausible"). Citing numerous First Amendment decisions, this Court recognized that "the distribution of a government benefit designed to favor the speech preferred by the government . . . might well render the statute unconstitutional." *Id.* Indeed, the *SKF* Court acknowledged explicitly that claimant SKF's opposition to the antidumping petition at issue "is protected First Amendment activity." *Id.* at 1354.

The Court therefore adopted what it termed an "alternative construction" of the statute's purpose to "save the statute" -- "to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings." *Id.* at 1352. The Court then turned to construction of the statutory language, noting that the language "is easily susceptible to a construction that rewards actions (litigation support) *rather than the expression of particular views*." *Id.* at 1353 (emphasis supplied). Such a construction, the Court

held, was "necessary to cabin its scope so that it does not reward a mere abstract expression of support," *id.*, as the latter would run afoul of the First Amendment.

This Court thus explicitly has construed the CDSOA "to only permit distributions to those who actively supported the petition (*i.e.*, a party that did no more than submit a bare statement that it was a supporter without answering questionnaires or otherwise actively participating would not receive distributions)." *Id.* at 1353 n.26. The *SKF* Court exercised great care to construe both the purpose and language of the statute as not aimed at favoring a particular viewpoint, as such constructions were necessary to avoid the first Amendment strict scrutiny that would attach to governmental attempts to favor a particular viewpoint. *Id.* at 1354-55 (applying lesser scrutiny -- for commercial speech -- after concluding that purpose of CDSOA is to reward those who support government enforcement).

Having ruled that "Congress could permissibly conclude that it is not required to reward an opposing party," *id.* at 1358, the *SKF* Court next set out to determine whether SKF was an opposing party. Notably, the Court did not rely exclusively or even primarily on SKF's "oppose" responses to the petition support question. Indeed, if the Court had considered that response to be "the controlling fact," it would not have had to engage in any further analysis. The analysis the *SKF* Court actually applied contradicts both the CIT's analysis, and the

40

government's argument that the statute requires both a check-off in the "support" box and actions in support.

Instead, notwithstanding SKF's check-off of "oppose," the Court considered a wide-variety of SKF's other actions, including actions completely outside of the questionnaire responses. The *SKF* Court noted that SKF completed a questionnaire response. *Id.* It then listed the actions that SKF took in opposition to the petition, including that SKF had argued that the petition should be denied and that the domestic industry was not materially injured, through briefs and the testimony of both fact and expert witnesses. *Id.* at 1359. The Court was not persuaded that SKF had indicated support simply by responding to the questionnaire, and it likened SKF's questionnaire response to that of litigation participants who "reluctantly respond" to discovery requests. *Id.* Only in light of SKF's outweighing actions in opposition to the petition did the Court hold that SKF did not qualify as an affected domestic producer.

The *SKF* Court's decision and analysis fully support Giorgio's construction of the statute as prohibiting the ITC from relying dispositively on the petition support question, and, indeed, go much further. The petition support response is not controlling for constitutional reasons, and the statute must be construed and limited to avoid that result. Indeed, the support analysis required by this Court's construction of the statute in *SKF* is not limited to the questionnaire at all.

Applying *SKF*'s weighing test, the remainder of Giorgio's questionnaire responses showing support for the petition, combined with its other actions in support, far outweigh its abstract statement that it "opposed" the petition as to India and "took no position" as to China, Chile, and Indonesia. Giorgio's participation in the antidumping proceedings in no way resembled SKF's active opposition. SKF had argued and presented evidence that there was no material injury or threat of material injury to the domestic injury. *Id.* at 1358-59. Thus, SKF had taken on the role of "defendant" in the proceeding, actively seeking to avoid the imposition of antidumping duties.

In contrast, Giorgio's responses to the questionnaires as a whole supported the petition, and presented evidence and argument to support the petition's allegations of material injury. JA0077-JA0078 (SAC ¶ 47). Giorgio's responses supported the petition's allegations of declining prices, lost sales, and lost revenues as a result of low-priced imports. JA0077-JA0078 (SAC ¶¶ 47-50). Throughout its questionnaires, Giorgio repeatedly asserted that it had been injured by low-priced imports, making statements that "would be made only by a producer actually supporting a petition." JA0078-JA0079 (SAC ¶ 51) (detailing examples).

Beyond the questionnaire, Giorgio provided only active support. Giorgio did not take any actions in opposition to the petition at any stage in the proceeding. Giorgio did not present any evidence, testimony, or briefs in opposition at any

point. JA0079-JA0080 (SAC ¶ 54). To the contrary, Giorgio directly assisted the

petitioners and the ITC in its investigation. Giorgio contributed to Petitioners'

legal fees. JA0073-JA0074 (SAC ¶ 33-34). Giorgio provided confidential

information under a confidentiality agreement, to help Petitioner's counsel prepare

the petition and develop its litigation strategy. JA0074-JA0075 (SAC ¶ 35-37).

Once the investigation commenced, Giorgio fully completed both

questionnaires. JA0077 (SAC ¶ 45). On January 21, 1998, as part of the ITC's

investigation, Giorgio hosted a site visit to its preserved mushroom plant. JA0077

(SAC ¶ 43). Giorgio hosted not only two ITC staffers, but also petitioners' counsel

for this site visit. *Id.* Giorgio did so voluntarily, and it worked with petitioners'

counsel to prepare for the visit. *Id.* Giorgio took the ITC investigators on a tour of

a production line that had been closed, as Giorgio explained in its questionnaire

responses, as a result of the influx of low-priced imports. *Id.* Giorgio also

provided follow-up information to the ITC regarding the Chinese mushroom

market and Giorgio's production line shutdown, both of which had been discussed

with Giorgio's management during the site visit. JA0077 (SAC ¶ 44); JA0223-

JA0227 (letter to ITC).

Giorgio thus in no way resembled the "reluctant respondent" this Court

described in *SKF*, forced unwillingly to respond to the ITC's questionnaires. In all

respects, other than its "mere abstract expression of viewpoint," Giorgio acted like

43

a latent petitioner in the antidumping investigation, actively showing its support for the petition.  The CIT's futility determination, based on one "controlling fact," reflects an erroneous interpretation of the statute, constituting reversible error.

### 3. *Chez Sidney* Reaffirmed *SKF*'s Construction of the CDSOA And Made Clear that the ITC Must Consider the Entire Questionnaire Response

This Court's subsequent decision in *Chez Sidney* buttresses this conclusion. In *Chez Sidney*, the Court reaffirmed its construction of the CDSOA in *SKF*, in the context of a statutory claim.  This Court noted that "[b]oth the ITC and Customs . . . contend that § 1675c(d) requires not just the submission of letters or responses, but also the inclusion of an affirmative declaration of support for the petition."  684 F.3d at 1380.  This Court explicitly rejected that argument, concluding that "the statute's plain language does not require that producers indicate an expression of support other than through a letter or by filing a response -- it states that *supporting producers are those who submit letters or responses*." *Id.* (emphasis added).

As in *SKF*, the *Chez Sidney* Court did not rely on claimant Chez Sidney's response to the petition support question as dispositive of the issue of whether Chez Sidney should be included on the list of affected domestic producers.  To the contrary, the Court declared unequivocally that it was "unreasonable" for the ITC

to have "considered only the boxes Chez Sidney checked in making its decision." *Id.* at 1382.

The *Chez Sidney* Court emphasized the First Amendment underpinnings of its construction of the CDSOA, noting that "we have construed the Byrd Amendment not to reward *or penalize* abstract expression by itself." *Id.* at 1381 (emphasis added). The Court reaffirmed that "it was necessary to limit the meaning of the term 'support' so that would not include the mere abstract expression of support." *Id. Chez Sidney* thus confirms that the determination of CDSOA eligibility must "concentrat[e] on the activities of supporters," *id.*, and that "it is the surrounding circumstances, not abstract statements of support alone, upon which an appropriate support determination depends." *Id.* at 1383.

The *Chez Sidney* Court also emphasized that an important circumstance that must be considered is "whether the producer has participated in the investigation by *providing supporting information or arguments in a questionnaire response.*" *Id.* (emphasis supplied). The Court emphasized that the claimant in *SKF* was denied distributions because its "other actions in opposition to the petition outweighed the assistance it provided by responding to the questionnaire." *Id.* at 1381. Once again, the Court both stated and demonstrated through its analysis that the response to the petition support question was not dispositive.

The *Chez Sidney* Court then held "that when a U.S. producer assists investigation by responding to questionnaires but takes no other action probative of support or opposition, the producer has supported the petition under § 1675c(d) and is eligible for distributions if it can otherwise make the required certification that it has been injured." *Id.* at 1382. Because "Chez Sidney did not fail to file responses to the questionnaires, it did not engage in any activity in opposition to the petition, and it never expressed that it opposed the petition," the Court concluded that it qualified as an affected domestic producer under the CDSOA. *Id.*

*Chez Sidney* too thus supports Giorgio's statutory claim and undercuts the CIT's futility ruling. As in *SKF*, the Court treated the claimant's response to the petition support question not as dispositive, but at most as one factor to be weighed against others. Even more importantly, the Court acknowledged explicitly that an eligibility determination must consider the entirety of the questionnaire response, in order to evaluate whether the claimant "*provided supporting information or arguments in a questionnaire response*." In Giorgio's case, both the ITC and the CIT failed to conduct any such analysis.

In short, Giorgio's statutory claim was not futile, and the CIT's refusal to permit such claim to be added therefore was an abuse of discretion.

### 4. *Ashley* Does Not Undermine the Viability of Giorgio's Statutory Claim

In *Ashley*, two producers challenged their exclusion from the list of affected domestic producers in an antidumping proceeding relating to Chinese wooden bedroom furniture. This Court noted that CDSOA claimants fall on a spectrum, based on the particular circumstances presented. 734 F.3d at 1310-11. In *Ashley*, one producer answered the petition support question with "take no position"; the other answered "oppose." *Id.* Neither alleged that they had participated in the investigation in support of the petition in any way other than through completing the questionnaires. *Id.* And, unlike Giorgio, neither alleged that their questionnaire responses as a whole showed support for the petition.

The CIT decided the cases underlying *Ashley* on motions to dismiss, meaning they were resolved on the basis of the allegations in the complaints. *Id.* at 1310. Both producers relied exclusively on having completed the questionnaires as their sole indication of support for the petition.

This Court, however, rejected the *Ashley* claimants' argument that it was sufficient "merely to supply the answers to the questionnaires." *Id.* at 1311. The Court stated that "a producer who never indicates support for the petition by letter or through questionnaire response cannot be an ADP." *Id.*

Critically, neither producer in *Ashley* had pled any facts indicating that the content of their questionnaire responses otherwise indicated support for the

47

petition. Neither pled that they had affirmatively indicated support for the petition through their questionnaire responses as a whole. Neither pled that they had assisted the ITC's investigation in other ways, such as hosting a site visit or providing information. Both relied exclusively on the fact they had fully responded to the questionnaires.

Giorgio's circumstances thus are distinguishable, as Giorgio has pled that its questionnaire responses as a whole indicate support of the petition, and it has pled that it took other specific actions actively to support the petition during the ITC's injury investigation and before. The *Ashley* decision thus does not in any way undercut Giorgio's position.

*Ashley* does not hold that the CDSOA permits the ITC to rely exclusively on a producer's response to the petition support question. To the contrary, in explaining its ruling, and to remain consistent with *SKF* and *Chez Sidney*, the *Ashley* Court stated that its decision was not made "solely on the basis of abstract expression." *Id.* at 1310.

Neither in its result nor in its analysis does *Ashley* support the CIT's conclusion here that such abstract expression is the controlling fact. Such expressions must be weighed with all of the other factors relied upon in *SKF* and *Chez Sidney*. The *Ashley* claimants simply did not point to any other support they had provided. Giorgio has. And, as this Court noted in *Ashley*, each case must be

decided on its own facts. 734 F.3d at 1311 ("[W]e must decide this case on its

facts."). [19]

### 5. No Other Grounds Exist to Deny Giorgio's Request to Add a Statutory Claim

In addition to concluding that Giorgio's proposed statutory claim was futile,

the CIT stated in passing that "Giorgio's new claim is not substantively different

from its previously abandoned claim." *Giorgio III*, 804 F. Supp. 2d at 1322. The

CIT did not explain why it believed that to be the case, nor did it provide any

comparative analysis of the two claims. The CIT likewise did not explain why,

even assuming the claims were identical, that provided a basis for denying

---

[19] Prior panel decisions should be reconciled whenever possible. *See Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860, 863 (Fed. Cir. 1985) ("[S]tatements in opinions must be read harmoniously with prior precedent, not in isolation."). The only way to harmonize *SKF*, *Chez Sidney*, and *Ashley* is to interpret *Ashley* as having balanced the claimants non-supportive answers to the petition support question against the support inherent in fully completing the questionnaires and concluding that the latter did not outweigh the former. Reading *Ashley* to require a threshold response of "support" to the petition support question puts it in direct conflict with both *SKF* and *Chez Sidney*, which contain explicit reasoning soundly rejecting that requirement. *Chez Sidney*, 684 F.3d at 1382; *SKF*, 556 F.3d at 1353.

If this Court concludes that it is unable to harmonize the three prior panel decisions, then it must abandon *Ashley*. To the extent this Court believes any two decisions to be in conflict, it must apply the ruling of the earlier decision. *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*. Where there is direct conflict, the precedential decision is the first." (internal citations omitted)).

Giorgio's motion to amend, in light of Rule 15(a)(2)'s instruction that the "court should freely give leave [to amend the complaint] when justice so requires."

Even if it were the same claim, there is no rule prohibiting the addition of a previously abandoned claim, absent a showing of undue delay or undue prejudice. The CIT did not, however, find undue delay or undue prejudice, or provide any analysis at all relating to undue delay or undue prejudice.

In fact, the claims were substantively different, and there was no undue delay or undue prejudice. Although both the claim in the original Complaint, filed in 2003, and the claim in the Second Amended Complaint, filed in 2011, broadly allege that the ITC acted inconsistently with the CDSOA, the claims differ in both scope and substance. It is undisputed that Giorgio's original statutory claim involved only three countries (Chile, China, and Indonesia), but that the new statutory claim involves all four countries. *Compare* JA0126-JA0127 (Compl. ¶ 45) *with* JA0089 (SAC ¶ 100).

More importantly, a claim consists not only of the cause of action named but also the facts pled in support of that cause. It is beyond dispute that Giorgio pled significant new facts in its Second Amended Complaint, including its allegations that its questionnaire response as a whole supported the petition. The cause of action may have had the same general legal basis, but the claim differed substantively.

50

As the ITC itself recognized in its July 25, 2003 motion to dismiss,

Giorgio's original statutory claim primarily was based on the letter that Giorgio

had sent to the ITC in 2001, after the completion of the underlying antidumping

proceeding, in which Giorgio expressed "unequivocal support" for the petitions

relating to Chile, China, and Indonesia.  JA0136, JA0146-JA0147 (ITC Motion to

Dismiss).  In contrast, Giorgio based its new statutory claim explicitly on this

Court's 2009 decision in *SKF* construing the CDSOA.  JA0089 (SAC ¶ 101).

Giorgio alleged that the ITC acted inconsistently with the CDSOA by considering

only the response to the petition support question and by failing to consider its

questionnaire responses as a whole or the actions that Giorgio had taken in support

of the petition.  *Id.*  The claim thus also had changed as a result of this Court's

intervening clarification of the law.

Finally, there has been no undue delay in the filing of Giorgio's motion to

amend or any undue prejudice to defendants.  The CIT had stayed Giorgio's case

pending a final decision in *SKF*, which occurred on May 17, 2010, when the

Supreme Court denied *certiorari*.  *SKF USA, Inc. v. Customs & Border Protection*,

560 U.S. 903 (2010).  The parties in Giorgio filed status reports in July 2010.  On

August 30, 2010, Giorgio then filed its motion to complete the ITC record.  The

ITC supplemented the administrative record on February 14, 2011.  Once it

completed its review of these materials, Giorgio filed its motion to amend, which

incorporated extensive information from the newly completed administrative record, on June 7, 2011.[20]  There was no delay by Giorgio, let alone *undue* delay, in its filing of its Second Amended Complaint and the accompanying motion for leave to amend.

There also was no prejudice to any defendant.  Although this case has been on file since 2003, for much of that time it has been stayed pending the resolution of other cases.  Discovery was stayed, along with the rest of the proceedings.  There has been no discovery, or, indeed, any activity that could give rise to prejudice from a new claim.

### C. Giorgio's Complaint States a Viable As-Applied First Amendment Challenge to the CDSOA's Petition Support Requirement under this Court's Precedents

The second issue raised in this appeal is whether the CIT erroneously dismissed Giorgio's claim that the ITC's application of the petition support requirement to Giorgio's factual circumstances violated the First Amendment.[21]

---

[20] Between the filing of the administrative record and the filing of Giorgio's motion to amend, the parties also filed a consent motion to bifurcate proceedings and motions for scheduling orders.  JA0058-JA0059 (docket entries).

[21] Giorgio previously dismissed its facial constitutional challenges to these CDSOA provisions, in light of *SKF*, and it does not appeal the dismissal of its Equal Protection challenge; accordingly, its only remaining constitutional challenge is its as-applied First Amendment challenge.

To succeed on a facial challenge, a plaintiff must show that the statute is "unconstitutional in all of its applications."[22]  An as-applied challenge, on the other hand, is specific to the plaintiff's particular facts.  To succeed on its as applied challenge, Giorgio need only demonstrate that the ITC's application of the statute to Giorgio violated the First Amendment.  *Bigelow v. Virginia*, 421 U.S. 809, 818 (1975).  None of this Court's prior decisions resolves Giorgio's as-applied First Amendment claim, as none addressed Giorgio's particular factual circumstances.  *See Ashley*, 734 F.3d at 1311 ("[W]e must decide this case on its facts.").

The *SKF* and *Chez Sidney* decisions in particular nonetheless are relevant because in both cases this Court acknowledged that the CDSOA could violate the First Amendment in particular circumstances if construed in particular ways.  This Court therefore adopted a specific limiting construction of the support requirement to save its constitutional validity.  Specifically, the Court in *SKF* construed that provision so as not to permit eligibility to be based solely on a producer's "expression of particular views."  556 F.3d at 1353.  The Court held that a producer that filed a questionnaire that simply checked off the "support" box, without completing the rest of the questionnaire or engaging in other support

---

[22] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also United States v. Stevens*, 559 U.S. 460, 473 (2010).

activities, could not receive benefits, 556 F.3d 1354 n.26, even though such an indication of support satisfies the plain language of the statute.

Indeed, in light of this Court's saving construction of the CDSOA to avoid constitutional problems, there is little if any substantive difference between Giorgio's statutory claim and its as-applied First Amendment claim.  Under both claims, this Court must evaluate the ITC's determination in light of the statute's language as already construed by this Court to save the statute from facial invalidity under the First Amendment.[23]  Put another way, whether or not the Court agrees that the CIT abused its discretion in denying Giorgio's motion to amend, it still must confront the same arguments raised above, in the context of Giorgio's constitutional claim, because it still must construe a statute it already has limited for constitutional reasons.  Giorgio therefore focuses below on highlighting the First Amendment underpinnings of its construction of the CDSOA.

---

[23] The principal difference are (1) the differing procedural postures of the two claims, and (2) that the court's review of Giorgio's statutory claim may be limited by the APA to an administrative record, but its constitutional claim, which does not arise under a statute, is not.  *See*, *e.g.*, *Webster v. Doe*, 486 U.S. 592, 604 (1988) (permitting discovery relating to constitutional claims); *Puerto Rico Public Housing Admin. v. U.S. Dept. of Housing & Urban Dev.*, 59 F. Supp. 2d 310, 328 (D.P.R. 1999) (permitting discovery when no administrative record existed as to constitutional claims).

### 1.    The First Amendment Provides the Framework for Construing the CDSOA

The Supreme Court has made clear that content-based speech is entitled to the highest First Amendment protections.  *See*, *e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995); *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991).

In *Speiser v. Randall*, 357 U.S. 513 (1958), the Supreme Court struck down a California law that required veterans to affirm that they did not support the overthrow of the U.S. government before they could claim a tax exemption available to veterans.  The Court explained that "[t]o deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech."  *Id.* at 518.

The Court similarly has observed that "[t]he government offends the First Amendment when it imposes financial burdens on certain speakers based on the content of their expression.  When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant."  *Rosenberger*, 515 U.S. at 828-29 (citations omitted); *see also Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996) ("[T]he government may not deny a benefit to a person on a basis that infringes his

constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit." (internal quotations omitted)); *accord Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 545 (1983); *Miami Herald Publ'g Co. v. Tornilo*, 418 U.S. 241, 256 (1974); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

These cases also hold that statutes that involve viewpoint-based discrimination are subject to strict scrutiny. "Under strict scrutiny review, the government bears the burden of showing that its regulation is 'necessary to serve a compelling state interest' and that it is 'narrowly drawn to achieve that end.'" *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 409 (6th Cir. 1999) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992)); *see also Playboy Entm't Group*, 529 U.S. at 813. This is generally an insurmountable hurdle. As the Supreme Court has noted, "it is the rare case in which . . . a law survives strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211 (1992).[24]

---

[24] Indeed, the Supreme Court recently reaffirmed that *all* content-based speech restrictions, including restrictions on commercial speech, are subject to "heightened judicial scrutiny" under the First Amendment. *See Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2664 (2011). The Supreme Court further clarified that "the 'distinction between laws burdening and laws banning speech is but a matter of degree' and that the 'Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.'" *Id.* (quoting *Playboy Entm't Group*, 529 U.S. at 812); *see also Simon & Schuster, Inc.*, 502 U.S. at 115

Footnote continued on next page

### 2. Giorgio's Second Amended Complaint States a Viable As-Applied First Amendment Claim

Requiring a domestic producer to state expressly and publicly that it supports a petition as a condition to receiving a government benefit implicates the First Amendment and contravenes these decisions. This Court decided such in *SKF*, and therefore both limited the statute as described above to prevent the mere expression of a "support" viewpoint to establish eligibility, and, correspondingly, refused in its analysis to base SKF's eligibility determination exclusively on SKF's expression of an "oppose" viewpoint. The Court did so explicitly citing *Speiser*, *Rosenberger*, and *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001). 556 F.3d at 1351.

Giorgio has pled that its questionnaire response as a whole shows support for the petitions, as to all four countries, and that it otherwise actively supported the petition through its cooperation with the petitioners and their counsel and its active participation in the investigation, including though hosting a site visit by Commission staff, which it prepared for with petitioners' counsel. The as-applied constitutional question presented by these facts is whether, if the First Amendment

---

Footnote continued from previous page
(striking down a statute that did not prohibit speech because it "impose[d] a financial burden on speakers because of the content of their speech"); *accord Citizens United*, 558 U.S. at 340 ("Laws that burden political speech are subject to strict scrutiny.")

does not allow a benefit to be *awarded* solely based on a producer's check-off of the "support" box, as *SKF* holds, does it permit CDSOA benefits to be *denied* to Giorgio solely based on its check-off of the "take no position" or "oppose" boxes?

The answer must be no, because the First Amendment is blind as to the viewpoint expressed. If producers cannot be *rewarded* for an abstract expression of viewpoint (checking the "support" box), then it necessarily follows that Giorgio cannot be *penalized* solely based upon its abstract expression of viewpoint (checking the "take no position" or "oppose" box). The *Chez Sidney* Court so ruled in stating that "we have construed the Byrd Amendment not to reward *or penalize* abstract expression by itself." 684 F.3d at 1381 (emphasis added). The First Amendment issue is exactly the same in both cases -- the government may not base eligibility for a subsidy on the abstract expression of viewpoint.

Accordingly, the CIT erred in dismissing Giorgio's claim based on its interpretation of the statute that the answer to the one petition support question provided "[t]he controlling fact." *Giorgio IV*, 898 F. Supp. 2d at 1378. The CIT misread *SKF* in reasoning that "[n]othing in the *SKF USA II* opinion supports the notion that the Court of Appeals upheld the petition support requirement only partially or upheld the petition support requirement in some form other than as set forth in the CDSOA," *id.* at 1379, and that "[c]ontrary to plaintiff's view, *SKF USA II* did not establish a new test for ADP eligibility in order to conform the

58

statute to the First Amendment," *id.* at 1380.  This is exactly what the *SKF* Court

did, because "it was necessary to limit the meaning of the term 'support' so that it

would not include the mere abstract expression of support."  *Chez Sidney*, 684 F.3d

at 1381.

## VII.  CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Giorgio requests that this Court reverse the CIT's

denial of Giorgio's motion to amend its complaint to add a statutory claim.  This

Court should also reverse the CIT's dismissal of Giorgio's as-applied First

Amendment claim.

Respectfully submitted,

/s/  Sarah Brackney Arni
Michael T. Shor
Sarah Brackney Arni
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC  20004
(202) 942-5000

*Counsel for Giorgio Foods, Inc.*

April 18, 2014

**ADDENDUM**

# ADDENDUM
## TABLE OF CONTENTS

| **Document** | **Page** |
|---|---|
| *Giorgio Foods, Inc. v. United States*, Ct. No. 03-00286, CIT Slip Op. 11-139 (CIT Nov. 17, 2011) | JA0001 |
| *Giorgio Foods, Inc. v. United States*, Ct. No. 03-00286, CIT Slip Op. 13-29 (CIT Mar. 6, 2013) | JA0017 |

Slip Op. 11- 139

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
GIORGIO FOODS, INC.,                    :
                                        :
        Plaintiff,                      :
                                        :
    v.                                  :
UNITED STATES,                          :    Before:    WALLACH, Judge
                                        :    Court No.:  03-00286
        Defendant,                      :
                                        :
    and                                 :
                                        :
L.K. BOWMAN COMPANY,                    :
MONTEREY MUSHROOMS, INC., and           :
MUSHROOM CANNING COMPANY,               :
                                        :
        Defendant-Intervenors.          :
_____ :

[Plaintiff's Second Motion for Leave to Amend the Complaint is GRANTED IN PART and DENIED IN PART.]

Dated: November 17, 2011

Arnold & Porter, LLP (Michael T. Shor and Sarah Brackney Arni) for Plaintiff Giorgio Foods, Inc.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Courtney S. McNamara) and Andrew G. Jones, Office of Assistant Chief Counsel, United States Customs and Border Protection, Of Counsel, and James M. Lyons, General Counsel, Neal J. Reynolds, Assistant General Counsel, U.S. International Trade Commission (Patrick V. Gallagher, Jr.) for Defendant United States.

Akin, Gump, Strauss, Hauer & Feld, LLP (Valerie A. Slater and W. Randolph Teslik) for Defendant-Intervenors L.K. Bowman Company and The Mushroom Company.

Kelley Drye & Warren, LLP (Michael J. Coursey and R. Alan Luberda) for Defendant-

1

Intervenor Monterey Mushrooms, Inc.

<u>OPINION</u>

**Wallach, Judge:**

**I**
**INTRODUCTION**

Plaintiff Giorgio Foods, Inc. ("Giorgio" or "Plaintiff") filed a Second Motion for Leave to Amend the Complaint ("Plaintiff's Motion") seeking to amend its Complaint in five ways. First, in light of the Federal Circuit's decision in <u>SKF USA, Inc. v. U.S. Customs and Border Prot.</u>, 556 F.3d 1337 (Fed. Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 3273, 176 L. Ed. 2d 1182 (2010), Giorgio wishes to drop its First Amendment facial challenge to the petition support eligibility requirement of the Continued Dumping and Subsidy Offset Act, 19 U.S.C. 1675(c) ("CDSOA") while maintaining its challenge to the requirement as applied to Giorgio. Memorandum of Law in Support of Plaintiff's Second Motion for Leave to Amend the Complaint ("Plaintiff's Memo") at 2-3.  Second, Giorgio wishes to drop its Equal Protection facial challenge to the petition support eligibility requirement of the CDSOA while maintaining its challenge to the requirement as applied to Giorgio. <u>Id.</u>  Third, Giorgio requests to add a claim "for statutory violations, claiming that the [U.S. International Trade Commission] and [U.S. Customs and Border Protection] acted inconsistently with the statute in ruling that Giorgio had not satisfied the statute's petition support requirement, and in otherwise denying CDSOA distributions to Giorgio." <u>Id.</u>  Fourth, Giorgio also requests to add a claim, "in the alternative, for violation of the Due Process Clause." <u>Id.</u> at 3.  Fifth, Giorgio seeks to clarify its requested relief "to state that it is specifically seeking money damages from the United States." <u>Id.</u> at 4.  The court has jurisdiction

2

over this matter pursuant to 28 U.S.C. § 1581(i).

For the reasons stated below, Giorgio's Motion is GRANTED in part and DENIED in part. As to its first and second requests, Plaintiff's Motion is GRANTED; as to its third, fourth, and fifth requests, Plaintiff's Motion is DENIED.

## II
## BACKGROUND

In order to qualify for distributions under the CDSOA,[1] an entity must qualify as an "affected domestic producer." 19 U.S.C. § 1675c(a) (2000) (repealed 2006); see also SKF USA, 556 F.3d 1337; Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352 (Fed. Cir. 2005). An "affected domestic producer" is defined as either a "petitioner" or an "interested party in support of the petition with respect to which an antidumping duty order . . . has been entered," the latter indicating its support "by letter or through questionnaire response." 19 U.S.C. § 1675c(b)(1)(A), (d)(1) (2000) (repealed 2006).

Prior to the enactment of the CDSOA, from 1998-99, the U.S. International Trade Commission ("ITC") conducted antidumping duty injury investigations concerning certain preserved mushrooms from Chile, China, India, and Indonesia. See Plaintiff's Complaint, Doc. No. 4 at 2, 4.[2] In response to the ITC's questionnaires in these investigations, Plaintiff "indicated

---

[1] 19 U.S.C. § 1675c (2000), Pub. L. No. 106-387, Title X, §§ 1001-03, 114 Stat. 1549, 1549A73-A75 (2000), repealed by Pub. L. No. 109-171, Title VII, Subtitle F, § 7601(a), 120 Stat. 4, 154 (2006).

[2] The investigations resulted in the following: Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Chile, 63 Fed. Reg. 66,529 (December 2, 1998); Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from the People's Republic of China, 64 Fed. Reg. 8,308 (February 19, 1999); Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Indonesia, 64 Fed. Reg. 8,310 (February 19, 1999); Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from India, 64 Fed. Reg. 8,311 (February 19, 1999).

3

that it (1) took no position with respect to the petition filed against preserved mushrooms from

Chile, China, and Indonesia, and (2) opposed the petition with respect to India." Plaintiff's

Proposed First Amended Complaint, Doc. No. 59-2 at 8.[3]

In May 2003, Giorgio commenced this action to challenge its exclusion from the list of

affected domestic producers compiled by the ITC and from the resulting distributions by U.S.

Customs and Border Protection ("Customs") of funds under the CDSOA. Id. at 5-6. Giorgio

then sought to amend its original complaint, abandoning its statutory claim that the ITC violated

the CDSOA and adding an Equal Protection Clause constitutional claim as well as a claim for

unjust enrichment. Giorgio Foods, Inc.'s Motion for Leave to Amend Complaint, Doc. No. 59 at

1.[4] The court granted Giorgio's motion to amend its original complaint in part. Giorgio Foods,

Inc. v. United States, 31 CIT 1261, 515 F. Supp. 2d 1313 (2007).[5] Giorgio then successfully

sought to include in the administrative record documents from the preliminary and final

antidumping injury investigations regarding Certain Preserved Mushrooms from Chile, China,

India, and Indonesia, Invs. 731-TA-776-779. Plaintiff's Motion to Complete the ITC Record,

Doc. No. 95; Giorgio Foods, Inc. v. United States, 755 F. Supp. 2d 1342 (CIT 2011).

Plaintiff now "seeks to amend and supplement its complaint to take into consideration (1)

the Federal Circuit's decision in [SKF], (2) the documents Giorgio obtained from the [ITC] after

the Court granted Giorgio's Motion to Complete The Agency Record, and (3) new facts that

---

[3] All references to Document Numbers will be to the public versions of documents submitted by parties.

[4] Concurrently, the Federal Circuit decided SKF, holding that the CDSOA was not in violation of the First Amendment or the Equal Protection guarantees under the Fifth Amendment. SKF USA, 556 F.3d at 1340.

[5] Giorgio's request to amend its original complaint to add a new defendant was denied. Giorgio Foods, 31 CIT at 1262. All other requests to amend were granted. Id.

have occurred since the acceptance by this Court of the First Amended Complaint in 2007."

Plaintiff's Motion at 1 (internal citations omitted).

## III
## STANDARD OF REVIEW

USCIT R. 15(a), which parallels Rule 15(a) of the Federal Rules of Civil Procedure,

governs amendments to a party's complaint.  When a party seeks to amend its pleading before a

trial has been set, amendments may be granted only by leave of the court or by written consent of

the adverse party. USCIT R. 15(a)(2).[6]  The granting of a motion for leave to amend the

pleadings is within the sound discretion of the court. Intrepid v. Pollock, 907 F.2d 1125, 1129

(Fed. Cir. 1990).  Absent any dilatory motive, undue cause for delay, repeated failures to cure

deficiencies by amendments, futility of amendment, or undue prejudice to the opposing party,

leave to amend should be liberally given. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.

Ed. 2d 222 (1962).  "Futility of the proposed amendment is an adequate reason to deny leave to

amend." Cultor Corp. v. A.E. Staley Mfg. Co., 224 F.3d 1328 (Fed. Cir. 2000).  In exercising its

discretion, the court "will consider a variety of factors including, but not limited to, (1) the

timeliness of the motion to amend the pleadings; (2) the potential prejudice to the opposing

party; (3) whether additional discovery will be necessary; (4) the procedural posture of the

litigation; (5) whether the omitted counterclaim is compulsory; (6) the impact on the court's

---

[6] USCIT R. 15(a)(1) does provide for Amending as a Matter of Course. USCIT R. 15(a)(1) ("A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.")  However, this provision clearly does not apply here because the amendment was sought more than 21 days after service, see Plaintiff's Complaint (filed May 23, 2003); Plaintiff's Motion (filed June 2, 2011), and more than 21 days after service of the responsive pleading, see Answer of Defendant, Bureau of Customs and Border Protection, Doc. No. 16 (filed July 25, 2003); Plaintiff's Motion (filed June 7, 2011).

5

docket; and (7) the public interest." Tomoegawa (U.S.A.), Inc. v. United States, 15 CIT 182, 186, 763 F. Supp. 614 (1991) (citing Budd Co. v. Travelers Indem. Co., 109 F.R.D. 561, 563 (E.D. Mich. 1986)).

## IV
## DISCUSSION

The crux of Defendant Customs' opposition to Giorgio's first through fourth requests to amend is Custom's reading of the Federal Circuit's holding in SKF. See Defendant United States Customs and Border Protection's Response to Plaintiff's Second Motion to Amend the Complaint ("Customs' Response").[7] According to Customs, the "Federal Circuit essentially held that a producer must both (1) indicate its support of the petition (by checking the support box on the questionnaire) and (2) demonstrate that its support of the petition is not merely abstract (through active participation)." Id. at 6 (citing SKF, 556 F.3d at 1353 n.26) (emphasis in original); see id. at 10 (citing SKF, 556 F.3d at 1352-54). Customs argues that because Giorgio "concedes that it opposed the antidumping petition with respect to India and took no position with respect to the antidumping petitions regarding Chile, China and Indonesia," id. at 10,

---

[7] Defendant ITC addresses only Giorgio's third request in its reply brief, stating "[a]lthough Giorgio's other proposed amendments are not addressed by the Commission here, the Commission agrees with and supports the arguments made by the U.S. Department of Justice and U.S. Customs and Border Protection today in their opposition to Giorgio's motion for leave to amend its complaint." Defendant United States International Trade Commission's Opposition to Plaintiff's Motion to Amend the Complaint at 2 n.2 ("ITC's Opposition"). Echoing Defendants, Defendant-Intervenors, L.K. Bowman Company and the Mushroom Company (formerly, Mushroom Canning Company), concisely oppose Plaintiff's request to amend; Defendant-Intervenors argue Plaintiff's Motion should be denied because "(1) the proposed amendments are futile, and (2) Plaintiff unduly delayed in seeking leave to amend the complaint." Defendant-Intervenors' Joint Response to Plaintiff's Second Motion for Leave to Amend the Complaint at 2 ("Defendant-Intervenors' Response") (internal citations and footnotes omitted).

6

Giorgio's proposed amendments for its first four claims should all be rejected as futile, see id.[8]

Giorgio's first and second requests to amend its complaint, abandoning its constitutional facial challenges to the CDSOA, are granted. Infra Part IV.A. All of Giorgio's remaining requests are denied. Infra Parts IV.B-D.

### A
### Giorgio's First And Second Requests, Abandoning Its Constitutional Facial Challenges To The CDSOA, Are Granted

With regards to Giorgio's first and second requests, the court has previously encountered Defendant's arguments in a similar context;[9] in response the court found:

> [N]o prejudice to defendant or defendant-intervenors . . . would result from allowing the amendment of the two earlier complaints, and neither defendant nor defendant-intervenors point to any. The opposition to plaintiff's motions to amend is based solely on the ground of futility. However, in the circumstances of this consolidated case, in which the legal theory supporting the new claim and the new factual allegations already are before the court and are addressed in defendant-intervenors' motion to dismiss and for judgment on the pleadings, and in which amendment would not prejudice opposing parties, the court is not required to consider futility in ruling on plaintiff's motions to amend.

Std. Furniture Mfg. Co., Inc. v. United States, Slip Op. 11-032, 2011 Ct. Intl. Trade LEXIS 30, at *10-11 (CIT March 23, 2011) (granting Plaintiff's motions to amend) (citing Foman, 371 U.S. at

---

[8] See Customs' Response at 3 ("proposed amendments to the first and second claims are futile and should be rejected"); 10 (Giorgio's proposed amendment to the third claim "fails to allege facts that would state a claim for relief and should therefore be rejected as futile"), 11 (Giorgio's proposed amendment to the fourth claim "should be rejected as futile" because "Giorgio fails to allege facts that would state a claim for a due process violation").

7

182 ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.")).

Similarly here, neither Defendants nor Defendant-Intervenors posit that allowing the proposed amendment would prejudice any of the parties. See Customs' Response; Defendant United States International Trade Commission's Opposition to Plaintiff's Motion to Amend the Complaint ("ITC's Opposition"); Defendant-Intervenors' Joint Response to Plaintiff's Second Motion for Leave to Amend the Complaint ("Defendant-Intervenors' Response"). Additionally, nothing in Giorgio's first two requests presents anything new to the court, see Complaint; Plaintiff's Proposed First Amended Complaint; as Giorgio notes "[t]he first and second amendments Giorgio proposes narrow the case by eliminating its two facial constitutional challenges, while retaining Giorgio's as applied challenges. These amendments thus streamline the case," Plaintiff's Memo at 5.

---

[9] Compare Plaintiff's Motion for Leave to Amend Complaint, Court No. 07-00028, Std. Furniture Mfg. Co. v. United States, Doc. No. 47 at 5 (Plaintiff requested to amend its complaint in order "to clearly state that [Plaintiff] intends to present an argument not directly addressed by the Federal Circuit in the SKF case, namely, the constitutionality of the CDSOA's petition support requirement as applied to the facts in [Plaintiff's] case, which obviously was not before the Federal Circuit."), with Plaintiff's Motion at 2 ("Because the Federal Circuit upheld the statute so construed, Giorgio acknowledges that its facial challenge to the statute no longer is viable. Accordingly, Giorgio seeks leave to remove its facial challenge while maintaining its challenge under the First Amendment to the statute as applied to Giorgio.").

8

The court grants plaintiff's motion with regards to its first and second requests.[10]

**B**
**Giorgio's Third Request, To Reinstate Its Previously Abandoned Statutory Claim, Is**
**Denied**

With regards to Giorgio's third request, Defendant ITC argues that

> [b]ecause Giorgio failed to respond almost five years ago to the
> Commission's motion to dismiss a statutory claim materially
> identical to the one proposed by Giorgio in this amendment and
> because Giorgio has waited more than two years since the Federal
> Circuit's decision in [SKF] to file this proposed amendment to its
> complaint, granting Giorgio's motion to include a statutory claim
> would be unduly prejudicial to the Commission and would
> constitute undue delay by Giorgio in bringing its claim.

ITC's Opposition at 2. ITC states that it "is not arguing the meaning of the Federal Circuit's

decision in [SKF] to establish the proper test of producer's petition support status under the

statute nor does the Commission believe that the Court must resolve the issue at this time to deny

Giorgio's motion to include the proposed statutory claim." Id. at 11 n.3. Defendant-Intervenors

agree that "Plaintiff's purported 'new' claim is not premised on any facts or legal theories

previously unknown to Plaintiff" and is in fact "identical to a claim that Plaintiff dismissed four

years ago in order to allow the court to focus instead on what Plaintiff called 'legitimate

claims.'" Defendant-Intervenors' Response at 2 (emphasis in original).

Giorgio argues that its third proposed amendment is a new claim alleging that "(1) the

Commission's eligibility determination for Giorgio, and (2) [Customs'] refusal to provide

---

[10] Giorgio disagrees with Customs' characterization of SKF; Giorgio argues that the ITC, in other CDSOA
cases, "has incorrectly construed the decision in SKF as requiring actions in addition to the expression of particular
views." Plaintiff's Memo at 8. Giorgio asserts that "[a]n unconstitutional condition cannot be made constitutional
by adding other conditions–it remains unconstitutional standing alone or in combination with other factors." October
13, 2011 Oral Argument at 11:01:12-11:01:23. At this time, it is unnecessary for the court to determine the exact
parameters of the "support" requirement of the CDSOA; therefore, it is unnecessary to address the parties' disparate
interpretations of SKF.

distributions to Giorgio, are inconsistent with the CDSOA's petition support requirement as now construed by the Federal Circuit in <u>SKF</u>." Plaintiff's Memo at 6.  Giorgio further contends that "[t]his claim differs in both scope and substance from the statutory claim Giorgio had raised in its initial complaint but later withdrew." <u>Id.</u>  Specifically, Giorgio alleges that its new claim (1) will include a challenge to the antidumping duty order resulting from the investigation concerning certain preserved mushrooms from India, whereas before Giorgio only alleged a claim with regards to antidumping duty orders resulting from the investigations for China, Chile, and Indonesia and (2) is "predicated on <u>SKF</u>'s construction of the statute, which was unknown both at the time Giorgio filed its original complaint and at the time it withdrew its original statutory claim." Plaintiff's Memo at 6 n.2.

Giorgio's third request is denied.  Giorgio's new claim is not substantively different from its previously abandoned claim; Giorgio's attempt to add a new claim is futile since Giorgio specifically opposed the antidumping petition with respect to India, Plaintiff's Proposed First Amended Complaint at 8, and is therefore precluded from asserting a CDSOA violation claim after <u>SKF</u>. <u>See</u> <u>SKF</u>, 556 F.3d at 1359 (stating it was "thus rational for Congress to conclude that those who did not support the petition should not be rewarded"); <u>Candle Corp. of Am. v. United States</u>, 374 F.3d 1087, 1094 (Fed. Cir. 2004) ("The purpose of the statute is quite clear – to bar opposers of antidumping investigations from securing payments either directly or through the

10

acquisition of supporting parties").[11]

## C
## Giorgio's Fourth Request, To Add A Claim For Violation Of The Due Process Clause, Is Denied

Giorgio "also seeks to add substantive and procedural due process claims," Plaintiff's

Memo at 9, arguing that "[p]rocedurally . . . as the CDSOA provided Giorgio no notice of or

opportunity for any proceeding in which it could demonstrate the actions it took in support of the

petition, [Giorgio] is entitled to a trial de novo on such issues before this Court, which it seeks

not only under its Claims One and Two but also under Claim Three," id. at 10.

Defendant argues that "Giorgio fails to allege facts that would state a claim for a due

process violation." Customs' Response at 11.  Because Defendant asserts that the CDSOA

"actually precludes Giorgio from receiving CDSOA distributions," Defendant argues Giorgio is

unable to assert a "legitimate claim of entitlement," necessary to make a claim upon which relief

can be granted and therefore should be rejected for futility. Id. (internal citations omitted)

(emphasis in original).

In granting Giorgio's first and second requests, see supra Parts IV.A and IV.B, the court

has already rejected Defendant's argument that the CDSOA definitively "precludes Giorgio from

receiving CDSOA distributions," Customs' Response at 11 (emphasis in original).  However,

---

[11] It is undisputed that in SKF the Plaintiff opposed the antidumping investigation in that case in the same way Giorgio opposed the antidumping investigation concerning certain preserved mushrooms from India, i.e. both checked the "no" box. Compare SKF, 556 F.3d. at 1343 ("SKF also responded to the ITC's questionnaire, but stated that it opposed the antidumping petition"), with Plaintiff's Proposed First Amended Complaint at 8 (Plaintiff "indicated that it (1) took no position with respect to the petition filed against preserved mushrooms from Chile, China, and Indonesia, and (2) opposed the petition with respect to India.").  The Federal Circuit determined that "Congress could permissibly conclude that it is not required to reward an opposing party." SKF, 556 F.3d. at 1358. Therefore, any claim Giorgio brings with regards to the antidumping duty orders resulting from the investigation concerning India is futile after SKF.

Giorgio has failed to meet its burden of providing facts that would state a claim for a due process violation. As pointed out by Giorgio, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (internal citations omitted) cited by Plaintiff's Memo at 11. Giorgio, however, has had and continues to have an opportunity to challenge its exclusion from the list of those receiving distributions compiled by Customs. See Complaint (providing the procedural background prior to Giorgio's filing of the present case).[12] Giorgio's fourth request is denied.

## D
### Giorgio's Fifth Request, To Add A Claim For Money Damages, Is Denied

Giorgio argues that it should be allowed "to expand and clarify its request for relief, including by expressly requesting an award of money damages against the United States." Plaintiff's Memo at 12. Giorgio asserts any objection would be "frivolous," because "every final judgment of this Court 'should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleading,'" id. at 13 (citing USCIT R. 54(c)), and because 28 U.S.C. § 2643 "authorizes entry of a money judgment against the United States 'in any civil action commenced under section 1581 or 1582 of this title,'" id. (citing 28 U.S.C. § 2643(a)(1)). Giorgio argues that Defendants ignore the latter provision when asserting that the Administrative

---

[12] See Complaint at 11-13 ("Customs . . . annually publishes a notice of intent to distribute offsets for the soon to be completed fiscal year. . . . Pursuant to that notice, on October 2, 2001, Giorgio Foods filed . . . certifications [and] requested that the commission modify its list of affected domestic producers . . . . On October 11, 2001, the Commission responded to Giorgio Foods request . . . On October 22, 2001, Giorgio Foods responded to the Commission's October 11, 2001 letter . . . On January 3, 2002, the Commission responded to Giorgio Foods October 22, 2001 letter.").

12

Procedures Act ("APA"), the applicable statute when jurisdiction is derived from 28 U.S.C. § 1581(i), see 28 U.S.C. § 2640(e), prevents money damages from being awarded due to the APA's limited sovereign immunity provision. Plaintiff's Memo at 13.

Customs argues that "[c]ontrary to Giorgio's assertions, the Court of International Trade is not permitted to issue money judgments in section 1581(i) cases." Customs' Response at 12. In support of its position, Customs cites Wopsock v. Natchees, 454 F.3d 1327, 1333 (Fed. Cir. 2006) ("The APA does not authorize an award of money damages at all; to the contrary, section 10(a) of the APA, 5 U.S.C. § 702, specifically limits the Act to actions 'seeking relief other than money damages.'"),[13] asserting also that "this Court and the Federal Circuit have repeatedly recognized that a plaintiff in a section 1581(i) case must generally rely upon the waiver of sovereign immunity provided by the APA." Customs' Response at 12 (internal citations omitted).[14]

Giorgio incorrectly conflates the terms of the relief requested. The Supreme Court, when discussing section 702 of the APA, noted

> Our cases have long recognized the distinction between an action
> at law for damages–which are intended to provide a victim with
> monetary compensation for an injury to his person, property, or

---

[13] Section 702 of the APA states "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." 5 USC § 702 (emphasis added).

[14] Customs cites a line of cases in support of its position, specifically highlighting Canadian Lumber Trade Alliance v. United States, 441 F. Supp. 2d 1259, 1265 (CIT 2006), aff'd in part, vacated in part, 517 F.3d 1319 (Fed. Cir. 2008) ("Given that the United States, and the agencies thereof, are cloaked in sovereign immunity, a party may only sue the United States for monetary damages when Congress has affirmatively waived the government's immunity . . . . Here, Plaintiffs have raised their claims under the [APA]. Although the APA generally waives the Unites States' immunity from suit, it does not permit claims for monetary damages."). Customs' Response at 12-14.

reputation–and an equitable action for specific relief–which may include an order providing for the reinstatement of an employee with backpay, or for the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages." Thus, we have recognized that relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not "damages" . . . .

Bowen v. Massachusetts, 487 U.S. 879, 893-894, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988)

(internal quotes, citations, and original emphasis omitted). The situation described by the Bowen

Court is similar to the one here. Giorgio requests the following relief in its Proposed Second

Amended Complaint:

> c. Order Customs to release to Giorgio all CDSOA distributions Customs has withheld with respect to Fiscal Years 2006-2009, and for any years thereafter.

> d. Order Defendant United States to pay to Giorgio as money damages all of Giorgio's lawful share of all CDSOA disbursements under the antidumping duty orders governing certain preserved mushrooms from Chile, China, Indonesia, and India, for FY 2001-2010, and in the future, to the extent not covered by the release of withheld funds.

> c.[sic] In the alternative, and to the extent the Court determines that Giorgio was entitled to CDSOA distributions but is not entitled to a money judgment against the United States, order Defendant-Intervenors L.K. Bowman Company, Monterey Mushrooms, Inc., and Mushroom Canning Company to disgorge and make full restitution to Giorgio of Giorgio's lawful share of all CDSOA disbursements they have received under the antidumping duty orders governing certain preserved mushrooms from Chile, China, Indonesia, and India.

> f. In the alternative, order Customs to recoup overpayments in respect of CDSOA distributions paid to persons other than Giorgio under each of the antidumping duty order governing certain

14

> preserved mushrooms from Chile, China, Indonesia, and India, as a result of the unlawful denial of CDSOA benefits to Giorgio, and to pay such funds to Giorgio.

Proposed Second Amended Complaint, Doc. No. 150-1 at 27 (emphasis added).  Except as an unnecessary label, nowhere does Giorgio seek, as the Supreme Court has defined it in this context, "money damages" but only "the recovery of specific property or monies." Bowen, 487 U.S. at 893-894; see Proposed Second Amended Complaint at 27.[15]

Because Giorgio is not seeking monetary damages, only monetary compensation which has been articulated in its Plaintiff's Proposed First Amended Complaint,[16] and because, as pointed out by Giorgio, "every final judgment of this Court 'should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleading,'" Plaintiff's Memo at 13 (citing USCIT R. 54(c)), the court agrees with Giorgio's counsel at oral argument that Giorgio's fifth request is unnecessary.[17]  Giorgio's fifth request is denied.[18]

---

[15] It is unnecessary for the court to determine whether it may issue money judgments under jurisdiction arising from section 1581(i); however, the court does note that Plaintiff persuasively argued that money judgments are allowed.  Plaintiff argues that it brings its claims under 28 U.S.C. § 1581(i) which grants this court jurisdiction, but does not provide a cause of action (which arises under the first sentence of section 702 of the APA, 5 U.S.C. § 702). See Plaintiff's Memo at 13; October 13, 2011 Oral Argument 11:30:22-11:31:05.  However, Plaintiff relies on the later in time authorization of relief found in 28 U.S.C. § 2643 and not the limited sovereign immunity waiver of the APA. See Plaintiff's Memo at 13; October 13, 2011 Oral Argument 11:32:11-11:33:56.  Giorgio argues that 28 U.S.C. § 2643 unequivocally authorizes entry of a money judgment against the United States "in any civil action commenced under section 1581 or 1582 of this title." Plaintiff's Memo at 13; 28 U.S.C. § 2643; see Sioux Honey Ass'n v. Hartford Fire Ins. Co., 700 F. Supp. 2d 1330, 1342 n.6 (CIT 2010) ("Those expressly granted remedial powers included, in § 2643(a), powers to order the monetary relief that would be needed in all cases heard under the court's original jurisdiction as provided in 28 U.S.C. §§ 1581 through 1583 . . . ."). Congress granted this authority concurrent with Congress' jurisdictional grant to the Court of International Trade in the Customs Court Act of 1980, four years after Congress articulated the limited sovereign immunity waiver of the APA in 1976. Compare 28 U.S.C. § 2643 with 5 U.S.C. § 702.

[16] See Plaintiff's Proposed First Amended Complaint at 19 ("Order Customs to release to Giorgio Foods all CDSOA distributions Customs has withheld with respect to Fiscal Years 2006 and thereafter.").

[17] Giorgio asserted that "[w]e believe our request for money damages . . . is a clarification of the relief we are requesting rather than a new claim  . . . .  We don't need it, but we want it." October 13, 2011 Oral Argument 11:27:04-11:27:56.

15

# V
## CONCLUSION

For the reasons above, Giorgio's Motion is GRANTED in part and DENIED in part. As to its first and second requests, Plaintiff's Motion is GRANTED; as to its third, fourth, and fifth requests, Plaintiff's Motion is DENIED.


\_\_/s/ Evan J. Wallach\_\_\_\_\_
Evan J. Wallach, Judge

Dated: November 17, 2011
New York, New York

---

[18] On October 27, 2011, Customs filed Defendant's United States Customs and Border Protection's Notice of Subsequent Authority, Doc. No. 167 ("Defendant's Supplemental") "direct[ing] the Court's attention to the recent order issued in Furniture Brands Int'l, Inc. v. United States." Defendant's Supplemental at 1 (citing Furniture Brands Int'l, Inc. v. United States, Slip Op. 2011-132, 2011 Ct. Int'l Trade LEXIS 131 (CIT Oct. 20, 2011)). Customs argued that in that case, the court "dismissed the complaint for failure to state a claim upon which relief can be granted and denied plaintiff's motion to amend the complaint." Id.

This opinion is consistent with Furniture Brands Int'l; in Furniture Brands Int'l, the plaintiff opposed the antidumping investigation, much the same way Plaintiff in this case opposed the antidumping investigation concerning certain preserved mushrooms from India. Compare Furniture Brands Int'l, 2011 Ct. Int'l Trade LEXIS 131 at *1 ("During proceedings before the ITC to determine whether such imports were causing or threatening to cause material injury to the domestic industry, Furniture Brands responded to the ITC's questionnaires, opposing the issuance of the antidumping order.") with Plaintiff's Proposed First Amended Complaint at 8 (Plaintiff "indicated that it (1) took no position with respect to the petition filed against preserved mushrooms from Chile, China, and Indonesia, and (2) opposed the petition with respect to India."); see supra 10 n.11. Furniture Brands Int'l did not address the situation before the court presently, i.e. when Plaintiff takes no position with regards to the filing of a petition and allegedly supports the petition in other ways.

16

Slip Op. 13-29

# UNITED STATES COURT OF INTERNATIONAL TRADE

GIORGIO FOODS, INC.,

                    Plaintiff,

    v.

UNITED STATES and UNITED STATES
INTERNATIONAL TRADE
COMMISSION,

                    Defendants,

    and

L.K. BOWMAN COMPANY,
MONTEREY MUSHROOMS, INC., and
THE MUSHROOM COMPANY,

                    Defendant-intervenors.

**Before: Timothy C. Stanceu, Judge**

**Court No. 03-00286**

## OPINION

[Grating motions to dismiss pursuant to USCIT Rules 12(b)(1) and 12(b)(5)]

Dated: March 6, 2013

    *Michael T. Shor* and *Sarah Brackney Arni*, Arnold & Porter LLP, of Washington, DC, for plaintiff.

    *Courtney S. McNamara*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for defendant United States.  With her on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director.

    *Neal J. Reynolds*, Assistant General Counsel for Litigation, and *Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington DC, for defendant U.S. International Trade Commission.

*Valerie A. Slater*, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC, for defendant-intervenors L.K. Bowman Company and The Mushroom Company. With her on the brief were *W. Randolph Teslik* and *Troy D. Cahill.*

*Michael J. Coursey* and *R. Alan Luberda*, Kelley Drye & Warren, LLP, of Washington, DC, for defendant-intervenor Monterey Mushrooms, Inc.

Stanceu, Judge: This case arose from decisions of two agencies, the U.S. International Trade Commission (the "ITC" or the "Commission") and U.S. Customs and Border Protection ("Customs"), denying plaintiff monetary benefits under the now-repealed Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c (2000).[1] The ITC determined that Giorgio Foods, Inc. ("Giorgio"), a domestic producer of preserved mushrooms, did not qualify for "affected domestic producer" ("ADP") status, which a domestic producer must obtain in order to receive CDSOA disbursements ("offsets") of collected antidumping duties from Customs. Giorgio claims it is owed a share of the duties Customs collected under various antidumping duty orders on imports of certain preserved mushrooms from Chile, the People's Republic of China ("China"), Indonesia, and India and distributed to other domestic mushroom producers.[2] Second Am. Compl. ¶ 17 (June 7, 2011), ECF No. 150-1.

---

[1] Pub.L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75, *repealed by* Deficit Reduction Act of 2005, Pub.L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007). Citations are to the codified version of the Continued Dumping and Subsidy Offset Act ("CDSOA"), 19 U.S.C. § 1675c (2000). All other citations to the United States Code are to the 2006 edition.

[2] *See Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 66,529 (Dec. 2, 1998); *Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from the People's Republic of China*, 64 Fed. Reg. 8,308 (Feb. 19, 1999); *Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Indonesia*, 64 Fed. Reg. 8,310 (Feb. 19, 1999); *Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from India*, 64 Fed. Reg. 8,311 (Feb. 19, 1999).

The ITC construed the "petition support requirement" of the CDSOA, 19 U.S.C.

§ 1675c(b)(1)(A), (d)(1), under which CDSOA offsets are limited to petitioners and parties in

support of an antidumping or countervailing duty petition, so as to disqualify Giorgio from the

list of potential ADPs because Giorgio indicated to the ITC in questionnaire responses that it did

not support the petition that resulted in the antidumping duty orders. *Id.* ¶ 45. Because Giorgio

lacked ADP status, Customs made no CDSOA disbursements to Giorgio for Fiscal Years 2001

through 2010. *Id.* ¶¶ 10, 80-84, 87.

Plaintiff's second amended complaint brings as-applied constitutional challenges to the

CDSOA's petition support requirement that are grounded in the First Amendment and the Fifth

Amendment equal protection guarantee. *Id.* ¶¶ 89-98. Plaintiff also asserts "unjust enrichment"

claims against the defendant-intervenors opposing it in this action, L.K. Bowman Company, a

division of Hanover Foods Corporation ("L.K. Bowman"), Monterey Mushrooms, Inc.

("Monterey"), and The Mushroom Company ("Mushroom Co."), each of whom Giorgio alleges

to have received and retained, unjustly, Giorgio's share of CDSOA distributions. *Id.* ¶¶ 85, 108.

Before the court are several motions to dismiss. The court concludes that Giorgio's

constitutional claims must be dismissed for failure to state a claim upon which relief can be

granted and that it lacks subject matter jurisdiction over Giorgio's unjust enrichment claims. The

court will enter judgment dismissing this action.

## I. BACKGROUND[3]

On January 6, 1998, an antidumping duty petition filed with Commerce and the ITC

sought the imposition of antidumping duties on preserved mushrooms from Chile, China,

---

[3] The facts as stated herein are as pled in the Second Amended Complaint.

Indonesia, and India.  Second Am. Compl. ¶ 26.  Beginning that year, the ITC conducted

investigations to determine whether imports of certain preserved mushrooms from Chile, China,

Indonesia, and India were causing or threatening to cause material injury to a domestic industry.

*Id*. ¶ 27 (citing *Initiation of Antidumping Investigations: Certain Preserved Mushrooms from*

*Chile, India, Indonesia, and the People's Republic of China*, 63 Fed. Reg. 5,360 (Feb. 2, 1998)).

In conducting those investigations, the ITC sent questionnaires to domestic producers of

preserved mushrooms, including Giorgio.  *Id*. ¶¶ 9, 45.  In its responses to the Commission's

questionnaires for the preliminary, as well as the final, phase of the investigations, "Giorgio

wrote that it (1) took no position with respect to the petition filed against preserved mushrooms

from Chile, China, and Indonesia, and (2) opposed the petition with respect to India."  *Id*. ¶ 45.

Based on an affirmative ITC injury determination and its own affirmative finding of sales

at less than fair value, the International Trade Administration, U.S. Department of Commerce

("Commerce" or the "Department") issued an antidumping duty order on certain preserved

mushrooms from Chile on December 2, 1998.  *Id*. ¶¶ 8, 62; *see also Notice of Antidumping Duty*

*Order: Certain Preserved Mushrooms from Chile*, 63 Fed. Reg. 66,529 (Dec. 2, 1998).

Similarly, on February 19, 1999, Commerce issued antidumping duty orders on preserved

mushrooms from India, Indonesia, and China.  Second Am. Compl. ¶¶ 8, 62; *see also Notice of*

*Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty*

*Order: Certain Preserved Mushrooms from India*, 64 Fed. Reg. 8,311 (Feb. 19, 1999); *Notice of*

*Antidumping Duty Order: Certain Preserved Mushrooms from Indonesia*, 64 Fed. Reg. 8,310

(Feb. 19, 1999); *Notice of Amendment of Final Determination of Sales at Less Than Fair Value*

*and Antidumping Duty Order: Certain Preserved Mushrooms from the People's Republic of*

*China*, 64 Fed. Reg. 8,308 (Feb. 19, 1999).

The CDSOA was enacted on October 28, 2000. 19 U.S.C. § 1675c. Concluding that

Giorgio had not supported a petition resulting in any of the four mushroom antidumping orders

so as to qualify Giorgio for CDSOA offsets, the ITC did not include Giorgio on its published

lists of ADPs for the mushroom antidumping duty orders for Fiscal Years 2001 through 2010.[4]

Second Am. Compl. ¶ 10. The ITC subsequently denied Giorgio's written requests for ADP

status. *Id.* ¶¶ 71-73. Giorgio filed CDSOA certifications with Customs for various fiscal years

to request CDSOA disbursements, but Customs made no disbursements to Giorgio.[5] *Id.*

¶¶ 67, 78. In contrast, the ITC included the defendant-intervenors on its ADP lists, under the

four mushroom antidumping orders, for all fiscal years since the CDSOA was enacted, and

Customs has distributed CDSOA offsets to the defendant-intervenors in every fiscal year. *Id.*

¶ 11.

---

[4] *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 40,782, 40,797 (Aug. 3, 2001); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 67 Fed. Reg. 44,722, 44,735-36 (July 3, 2002); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 68 Fed. Reg. 41,597, 41,630-31 (July 14, 2003); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 69 Fed. Reg. 31,162, 31,193-94 (June 2, 2004); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 70 Fed. Reg. 31,566, 32,156-57 (June 1, 2005); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 71 Fed. Reg. 31,336, 31,351, 31,366, 31,369, 31,372 (June 1, 2006); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582, 29,597, 29,612, 29,615, 29,619 (May 29, 2007); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 73 Fed. Reg. 31,196, 31,211, 31,226-27, 31,230, 31,233 (May 30, 2008); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 74 Fed. Reg. 25,814, 25,830, 25,846, 25,849, 25,852 (May 29, 2009); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 75 Fed. Reg. 30,530, 30,546, 30,562, 30,565, 30,568 (June 1, 2010).

[5] Plaintiff pleads that Giorgio Foods, Inc. ("Giorgio") did not file a certification for CDSOA benefits under the antidumping duty order for preserved mushrooms from India on account of futility, as the Commission's response to Giorgio's certifications for the three other antidumping duty orders had stated that it was "inappropriate" to add Giorgio to the list of ADPs because of Giorgio's questionnaire responses in the original investigations. Second Am. Compl. ¶¶ 70-73 (June 7, 2011), ECF No. 150.

Giorgio commenced this action on May 23, 2003.  Summons, ECF No. 1; Compl., ECF

No. 4.  This case was stayed on October 10, 2003 pending resolution of cross-motions for

judgment upon the agency record in another case involving a constitutional challenge to the

CDSOA, *PS Chez Sidney, L.L.C. v. U.S. Intern. Trade Com'n*, Court No. 02-00635.  Order,

ECF No. 27.  The decision in that case, *PS Chez Sidney*, 30 CIT 858, 442 F. Supp. 2d 1329

(2006) ("*Chez Sidney I*"), rejected a statutory CDSOA claim but held the CDSOA petition

support requirement violative of the First Amendment, *id*. at 1331-33.

After the lifting of the stay, plaintiff moved on July 28, 2006 for a temporary restraining

order and a preliminary injunction, seeking to prevent further CDSOA distributions to the

recognized ADPs for the mushroom antidumping duty orders.[6]  Giorgio Foods Inc.'s Mot. for a

TRO & for a Prelim. Inj., ECF No. 30.  This Court denied the motion for a temporary restraining

order on August 2, 2006, Order, ECF No. 32, and on August 9, 2006, plaintiff filed a second

motion for a preliminary injunction, Giorgio Foods Inc.'s Mot. for a Prelim. Inj., ECF No. 34.

On August 23, 2006, L.K. Bowman, Monterey, Mushroom Canning, and Sunny Dell Foods, Inc.

("Sunny Dell"), parties that were petitioners in the antidumping duty investigations, Second Am.

Compl. ¶ 27, moved to intervene in this action, Mot. to Intervene as of Right, ECF No. 39.  The

court granted the intervention motion with respect to all movants except for Sunny Dell, which

declined to produce a witness requested by plaintiff for questioning at the preliminary injunction

---

[6] As a result of the commencement of this action and plaintiff's moving on August 9,
2006 for a preliminary injunction, U.S. Customs & Border Protection ("Customs"), pending
resolution of this action, provisionally treated Giorgio as an affected domestic producer for
Fiscal Years 2006 through 2009 and withheld Giorgio's claimed share from distribution to
recognized ADPs.  Second Am. Compl. ¶ 87.  Customs did not withhold any CDSOA funds for
Giorgio for Fiscal Year 2010.  *Id*. ¶ 88.

hearing. Order 2 (Sept. 13, 2006), ECF No. 51. On September 22, 2006, this Court denied the motion for a preliminary injunction. Order Denying Pl.'s Mot. for Prelim. Inj., ECF No. 58.

On October 12, 2006, plaintiff moved for leave to amend its complaint. Giorgio Foods, Inc.'s Mot. for Leave to Amend the Compl., ECF No. 59. Plaintiff sought to abandon a statutory claim it had brought against the ITC, to add facial and as-applied challenges to the petition support requirement under the Fifth Amendment equal protection guarantee, and to add claims for unjust enrichment against the defendant-intervenors. Mem. of Law in Supp. of Pl.'s Mot. for Leave to Amend the Compl. 1-2, ECF No. 59. Plaintiff also sought to "update" its claims, to add "factual allegations" to account for developments since the case was filed and stayed in 2003, and to clarify its requested relief, which plaintiff specified as CDSOA distributions for fiscal years 2001 through 2005. *Id.*; First Am. Compl. ¶¶ 64, 69 (Oct. 12, 2006), ECF 59-2. On August 21, 2007, the court granted plaintiff's motion with respect to the aforementioned amendments.[7] *Giorgio Foods, Inc. v. United States*, 31 CIT 1261, 1262, 515 F. Supp. 2d 1313, 1316 (2007) ("*Giorgio I*").

On May 6, 2008, this Court stayed this action a second time pending appellate resolution of the *Chez Sidney* litigation as well as another case that addressed constitutional issues involving the CDSOA, *SKF USA Inc. v. United States*, Court No. 05-00542. Order, ECF No. 84; *SKF USA, Inc. v. United States*, 30 CIT 1433, 1446-47 451 F. Supp. 2d 1355, 1366-67 (2006) ("*SKF USA I*") (holding the petition support requirement of the CDSOA unconstitutional on

---

[7] Plaintiff's motion for leave to amend also sought to add Sunny Dell Foods, Inc. ("Sunny Dell") as a defendant. Giorgio Foods, Inc.'s Mot. for Leave to Amend the Compl. 4 (Oct. 12, 2006), ECF No. 59. The court denied this request, concluding that the addition would unduly prejudice plaintiff, based on Sunny Dell's previous refusal to produce a witness in response to plaintiff's request at the hearing on the motion for preliminary injunction. *Giorgio Foods, Inc. v. United States*, 31 CIT 1261, 1265-1267, 515 F. Supp. 2d 1313, 1318-20 (2007).

Fifth Amendment equal protection grounds).  On February 19, 2009, the Court of Appeals for the

Federal Circuit ("Court of Appeals") reversed *SKF USA I* and upheld the petition support

requirement under the First Amendment and the equal protection guarantee of the Fifth

Amendment.  *SKF USA, Inc. v. United States*, 556 F.3d 1337, 1360 (Fed. Cir. 2009) ("*SKF*

*USA II*").  On May 17, 2010, the United States Supreme Court denied a petition for a writ of

certiorari in *SKF USA II*.  *SKF USA, Inc. v. Customs and Border Protection*, 130 S.Ct. 3273

(2010).  On October 28, 2010, the Court of Appeals issued a non-precedential order in *PS Chez*

*Sidney*, stating that, following the denial of certiorari, *SKF USA II* is a final decision that "is

controlling with regard to all constitutional issues presented in [the] appeal," while limiting

briefing to the non-constitutional issues in that case.  *PS Chez Sidney, L.L.C. v. U.S. Intern.*

*Trade Com'n*, 409 F.App'x 327, 329 (Fed. Cir. 2010) ("*Chez Sidney II*").

       After the lifting of the second stay, plaintiff moved on April 5, 2010 for leave to amend

its complaint a second time.  Giorgio Foods, Inc.'s Second Mot. for Leave to Amend the Compl.,

ECF No. 150.  Plaintiff sought to withdraw its facial First Amendment and equal protection

challenges to the CDSOA and replace them with claims that the CDSOA violates the First

Amendment and Fifth Amendment equal protection guarantee "as applied to Giorgio" for Fiscal

Years 2001 through 2010.  Mem. of Law in Supp. of Pl.'s Second Mot. for Leave to Amend the

Compl. 2-4, ECF No. 150 ("Pl.'s Mem. in Supp. of Second Mot. to Amend"); Second Am.

Compl. ¶¶ 90-91, 94-97.  Plaintiff also sought to reinstate its previously abandoned statutory

claim and, in the alternative, to add a claim alleging "substantive and procedural due process

violations, arising from the CDSOA's failure to afford Giorgio notice and an opportunity to

present evidence of actions Giorgio took in support of the petition."  Pl.'s Mem. in Supp. of

Second Mot. to Amend 3-4.  Finally, plaintiff sought to add a claim for money damages against

the United States. *Id*. at 3-4, 12. On November 17, 2011, this Court granted plaintiff's request to abandon the facial constitutional claims, *Giorgio Foods, Inc. v. United States*, 35 CIT __, __, 804 F. Supp. 2d 1315, 1320-21 (2011) ("*Giorgio II*"), but denied plaintiff's requests to add a statutory claim, due process claims, and a claim for money damages, *id*. 35 CIT at __, 804 F. Supp. 2d at 1321-25.

On July 13, 2012, the Court of Appeals issued its decision in *PS Chez Sidney, L.L.C. v. U.S. Intern. Trade Com'n*, 684 F.3d 1374 (Fed. Cir. 2012) ("*Chez Sidney III*"). On October 16, 2012, defendant and defendant-intervenors filed their motions to dismiss. On January 30, 2013, the court denied a motion by plaintiff to stay this action pending the outcome of two appeals of CDSOA-related decisions arising from an antidumping duty order on Chinese wooden bedroom furniture that were, and continue to be, pending before the Court of Appeals. G*iorgio Foods v. United States*, 37 CIT __, __, Slip Op. 13-14, at 5 ("*Giorgio III*"). On March 1, 2013, plaintiff filed its response to the motions to dismiss. Pl.'s Opp'n to Defs.' and Def.-Intervenors' Mots. to Dismiss, ECF No. 200 ("Pl.'s Opp'n").

## II. Discussion

Before the court are the motions to dismiss the second amended complaint, as filed on October 16, 2012 by defendant United States, defendant ITC, and defendant-intervenors.[8] The

---

[8] Defendant U.S. International Trade Commission ("ITC") moved to dismiss under Rule 12(b)(5). Def. U.S. Int'l Trade Comm'n's Mot. to Dismiss Pursuant to R. 12(b)(5), ECF No. 179 ("ITC's Mot."). The United States and defendant-intervenors moved to dismiss under Rules 12(b)(1) and 12(b)(5). Def.'s Mot. to Dismiss for Failure to State a Claim upon which Relief Can Be Granted and Mot. to Dismiss for Lack of J. ("Def.'s Mot."), ECF No. 180; Mot. by Def.-Intervenors L.K. Bowman Co. and The Mushroom Co. (Formerly Mushroom Canning Co.) to Dismiss the Second Am. Compl., ECF No. 181 ("L.K. Bowman & Mushroom Co.'s Mot."); Def.-Intervenor Monterey Mushrooms, Inc.'s Mot. to Dismiss Pl.'s Second Am. Compl. Pursuant to Rs. 12(b)(1) and 12(b)(5), ECF No. 182 ("Monterey's Mot."). Earlier (in 2003), a motion to dismiss a count in the original complaint pursuant to USCIT Rule 12(b)(5) was filed (continued…)

claims remaining in that complaint following the decision of this Court in *Giorgio II*, 35 CIT

at __, 804 F. Supp. 2d at 1320-21, are constitutional challenges to the CDSOA, brought against

defendants ITC and the United States, and claims of unjust enrichment, brought against the

defendant-intervenors.[9]  Specifically, plaintiff challenges the petition support requirement of the

CDSOA, as applied to Giorgio, on First Amendment grounds.  Second Amended Compl.

¶¶ 89-92.  Further, it challenges the petition support requirement, as applied to Giorgio, on Fifth

Amendment equal protection grounds.  *Id.* ¶¶ 93-98.  Finally, invoking supplemental jurisdiction,

*id.* ¶ 21, plaintiff claims that the defendant-intervenors have been unjustly enriched at the

expense of Giorgio, having received and retained Giorgio's lawful share of CDSOA distributions

for certain fiscal years, and seeks restitution, through direct recovery of those distributions, from

each of the defendant-intervenors, *id.* ¶¶ 107-108, 109(e).

The court exercises subject matter jurisdiction over plaintiff's constitutional challenges to

the CDSOA according to section 201 of the Customs Courts Act of 1980 (2006), 28 U.S.C.

§ 1581(i)(4), which provides the Court of International Trade jurisdiction of civil actions arising

out of any law of the United States, such as the CDSOA, providing for administration with

respect to duties (including antidumping duties) on the importation of merchandise for reasons

other than the raising of revenue.  The CDSOA, out of which the constitutional claims arise, is

such a law.  *See Furniture Brands Int'l v. United States*, 35 CIT ___, ___, 807 F. Supp. 2d 1301,

---

(continued…)
by the ITC.  Mot. of Def. U.S. Int'l Trade Comm'n to Dismiss Claim 1 of the Compl. (Aug. 25, 2003), ECF No. 18.  Because this motion was limited to the statutory claim in plaintiff's original complaint, it became moot when plaintiff abandoned that claim in its first amended complaint.

[9] In accordance with this Court's Order dated April 22, 2011, ECF No. 143, which granted a Consent Motion for Bifurcation, the court adjudicates plaintiff's constitutional claims prior to adjudicating any other issues, including remedy issues and plaintiff's claims for unjust enrichment and restitution.

1307-10 (2011).  The court concludes it lacks subject matter jurisdiction over plaintiff's claims

of unjust enrichment.  This issue is addressed in Part II(B) of this Opinion.

A.  No Relief Is Available on Plaintiff's As-Applied Constitutional Challenges to the CDSOA

In deciding USCIT Rule 12(b)(5) motions to dismiss for failure to state a claim upon

which relief can granted, "the court must accept as true the complaint's undisputed factual

allegations and should construe them in a light most favorable to the plaintiff."  *Cambridge v.*

*United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citations omitted).  However, plaintiff's

complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a

plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on

its judicial experience and common sense."  *Id.* at 679.

The CDSOA amended the Tariff Act of 1930 ("Tariff Act") to provide for the

distribution of antidumping and countervailing duties to persons with ADP status, which is

limited to petitioners, and interested parties in support of petitions, with respect to which

antidumping duty and countervailing duty orders are entered.[10]  19 U.S.C. § 1675c(a), (d).[11]

---

[10] The CDSOA provided that:
The term "affected domestic producer" means any manufacturer, producer, farmer,
rancher or worker representative (including associations of such persons) that–
(A) was a petitioner *or interested party in support of the petition* with respect to
which an antidumping duty order, a finding under the Antidumping Act of 1921, or a
countervailing duty order has been entered, and
(B) remains in operation.
19 U.S.C. § 1675c(b)(1) (emphasis added).

[11] Congress repealed the CDSOA in 2006, but the repealing legislation provided that
"[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the
legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as
(continued…)

The statute directed the ITC to forward to Customs "within sixty days after the effective date of

this section [19 U.S.C. § 1675c] in the case of orders . . . in effect on January 1, 1999, or

thereafter . . . a list of petitioners and persons with respect to each order and finding and a list of

persons that indicate support of the petition by letter or through questionnaire response." *Id.*

§ 1675c(d)(1). The CDSOA directed that Customs publish in the Federal Register, prior to each

distribution, lists of ADPs potentially eligible for distributions of a "continuing dumping and

subsidy offset" based on the lists obtained from the Commission and that Customs request that

potentially eligible parties certify eligibility for such an offset. *Id.* § 1675c(d)(2). The CDSOA

also directed Customs to segregate antidumping and countervailing duties according to the

relevant antidumping or countervailing duty order, to maintain these duties in special accounts,

and to distribute to companies determined to be ADPs annually, as reimbursement for incurred

qualifying expenditures, a ratable share of the funds (including all interest earned) from duties

assessed on a specific unfairly traded product that were received in the preceding fiscal year. *Id.*

§ 1675c(d)(3), (e).

    The Second Amended Complaint states that "[a]s applied to Giorgio . . . the CDSOA's

petition support requirement violates the free speech clause of the First Amendment of the

United States Constitution." Second Am. Compl. ¶ 90. Plaintiff alleges that "[a]s a result of the

---

(continued…)

if [the CDSOA] . . . had not been repealed . . . ." Deficit Reduction Act of 2005, Pub.L.
No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006). In 2010, Congress further limited CDSOA
distributions by prohibiting payments with respect to entries of goods that as of December 8,
2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation
from the Department of Commerce." Claims Resolution Act of 2010, Pub.L. No. 111-291,
§ 822, 124 Stat. 3064, 3163 (2010).

unconstitutional application of the petition support requirement, Giorgio has unlawfully been . . . denied CDSOA offsets . . . for fiscal years 2001-2010 . . . ." *Id.* ¶ 91.

Plaintiff alleges, further, that "[a]s applied to Giorgio . . . the CDSOA's petition support requirement violates the Equal Protection guarantee of the U.S. Constitution." *Id.* ¶ 94. The complaint states that the CDSOA's speech-based eligibility criterion "creates a classification that implicates the exercise of constitutional free speech rights . . . that is not narrowly tailored to achieve a compelling government objective." *Id.* ¶ 95. Plaintiff also claims that the petition support requirement "discriminates without a rational basis between Giorgio . . . and other domestic producers . . . , including the Defendant-Intervenors." *Id.* ¶ 96. Plaintiff alleges that because of the equal protection violation, "Giorgio has unlawfully been . . . denied [CDSOA offsets] . . . for fiscal years 2001-2010 . . . ." *Id.* ¶ 97.

Both of plaintiff's constitutional claims are foreclosed by the holding of *SKF USA II*, which upheld the petition support requirement of the CDSOA on both First Amendment and equal protection grounds. The Court of Appeals stated that "the Byrd Amendment is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad. We hold that the Byrd Amendment is valid under the First Amendment." *SKF USA II*, 556 F.3d at 1360. The Court of Appeals further held that "[b]ecause it serves a substantial government interest, the Byrd Amendment is also clearly not violative of equal protection under the rational basis standard." *Id.*

Although stating that its challenges are "as applied to Giorgio," Second Am. Compl. ¶¶ 90, 94, plaintiff does not plead facts distinguishing Giorgio's constitutional challenges from the challenges asserted, and rejected by the Court of Appeals, in *SKF USA II*. Plaintiff alleges various facts that it characterizes as demonstrating that it is in support of an antidumping duty

petition, including "providing all requested factual information" in its questionnaire responses to
the ITC.  Pl.'s Opp'n 1, 3 (citing Second Am. Compl. ¶ 45).  The controlling fact, however, is
plaintiff's admission in the complaint that, in both the preliminary and final phases of the
Commission's investigation, "in response to one question on each questionnaire asking whether
it supported the petition against each country, Giorgio wrote that it (1) took no position with
respect to the petition filed against preserved mushrooms from Chile, China, and Indonesia, and
(2) opposed the petition with respect to India."  Second Am. Compl. ¶ 45.  SKF USA, Inc.
("SKF"), the plaintiff in *SKF USA II*, challenged the petition support requirement on grounds
indistinguishable from those asserted here.  SKF did not express support for the petition involved
in that case.  *SKF USA II*, 556 F.3d at 1343.

　　　In opposing dismissal, plaintiff attempts to distinguish its case from *SKF USA II*, arguing
that SKF had actively opposed the petition while Giorgio actively "supported" the petition by
responding completely to the ITC's questionnaires and performing numerous other actions
before and during the ITC's investigation.  Pl.'s Opp'n 1-2 (citing Second Am. Compl. ¶¶ 29,
32-44).  Plaintiff submits that as-applied constitutional challenges are inherently fact-based, *id*.
at 14, and emphasizes that "Giorgio took no *actions* (as distinguished from its abstract
expression of viewpoint in response to the petition support question) to oppose the petitions or
Petitioners' trade enforcement efforts at any time in the Commission's investigation," *id*. at 1,
3-4 (citing Second Am. Compl. ¶ 54) (footnote omitted).

　　　The court rejects plaintiff's argument.  A party in the position of SKF and Giorgio, *i.e.*, a
party without petitioner status in an antidumping duty investigation brought under the Tariff Act
of 1930, can satisfy the petition support requirement of the CDSOA only if that party
"indicate[s]" to the Commission "support of the petition by letter or *through questionnaire*

*response*." 19 U.S.C. § 1675c(d)(1) (emphasis added). From the facts set forth in the Second

Amended Complaint, it is clear that Giorgio, like SKF, failed to do so. The fact that Giorgio, as

to three of the four countries named in the petition, did not take a position in opposition to the

petition is not a meaningful distinction in light of the holding in *SKF USA II*.

Nothing in the *SKF USA II* opinion supports the notion that the Court of Appeals upheld

the petition support requirement only partially or upheld the petition support requirement in

some form other than as set forth in the CDSOA. Although SKF undertook various actions to

"actively oppose" the petition, *id*. at 1358-59, whereas Giorgio opposed the petition only as to

one country, this distinction is not meaningful because the petition support requirement draws no

distinction between opposing a petition and declining to support a petition. *See* 19 U.S.C.

§ 1675c(b)(1)(A), (d)(1). Nor is the holding in *SKF USA II* based on any such distinction. As

the Court of Appeals stated, "[a]t best, the role of parties opposing (or not supporting) the

petition in responding to questionnaires is similar to the role of opposing or neutral parties in

litigation who must reluctantly respond to interrogatories or other discovery." *SKF USA II*,

556 F.3d at 1359. The Court of Appeals explained that because "the purpose of the Byrd

Amendment's limitation of eligible recipients was to reward injured parties who assisted

government enforcement of the antidumping laws by initiating or supporting antidumping

proceedings," *id*. at 1352, it was "rational for Congress to conclude that *those who did not*

*support the petition should not be rewarded*," *id*. at 1360 (emphasis added).

Next, plaintiff argues that in *SKF USA II*, the Court of Appeals "adopted a limiting

construction of the [CDSOA]" and in so doing established a new test for eligibility based on a

company's actions during the investigation, including its litigation support actions, rather than

the particular viewpoint expressed in questionnaire responses. Pl.'s Opp'n 18, 20 (citing *SKF*

*USA II*, 556 F.3d at 1353).  Accordingly, as plaintiff submits, "the ITC failed to consider [Giorgio's] actions and failed to make any factual findings concerning [the] *actions* it took in support or in opposition to the petition." *Id*. at 21 (citation omitted).  Plaintiff misinterprets the holding of *SKF USA II*.  The statements in the opinion alluding to a "limiting construction" that "rewards actions (litigation support) rather than the expression of particular views," were made in the context of a theoretical construction of statutory language as an alternative to the Court's previous discussion of congressional purpose and as part of the larger analysis by which the Court subjected the CDSOA to First Amendment standards for the regulation of commercial speech.  *See SKF USA II*, 556 F.3d at 1353 ("Finally, if we *were* to view this case as involving the construction of statutory language rather than an exercise in ascertaining statutory purpose, the result would be the same.") (emphasis added).[12]  Contrary to plaintiff's view, *SKF USA II* did not establish a new test for ADP eligibility in order to conform the statute to the First Amendment.  Instead, the Court upheld, in the face of constitutional challenges, the test for ADP eligibility that Congress enacted.  Like the plaintiff in *SKF USA II*, Giorgio did not meet that test.

In support of its as-applied challenges, plaintiff also cites the recent decision of the Court of Appeals in *Chez Sidney III*.  Plaintiff considers *Chez Sidney III* to be controlling in this action and submits that the Court of Appeals, "[b]uilding on its First Amendment analysis in *SKF [USA II]* . . . ruled [] that CDSOA benefits could neither be granted *nor denied* to a claimant solely based on an abstract expression of viewpoint."  Pl.'s Opp'n 23.  Thus, "*Chez Sidney [III]*

---

[12] The court notes, further, that "as applied" First Amendment challenges in the commercial speech context are generally disfavored.  *See United States v. Edge Broadcasting Co.*, 509 U.S. 418, 430-31 (1993) ("[We] judge the validity of the restriction in this case by the relation it bears to the general problem . . . not by the extent to which it furthers the Government's interest in an individual case.").

[] reiterates that . . . 'it is the surrounding circumstances, not abstract statements of support alone, upon which an appropriate support determination depends.'" *Id*. (citing *Chez Sidney III*, 684 F.3d at 1382-83).[13]  Plaintiff argues, further, that "the analysis and holding of *Chez Sidney [III]* cannot be ignored simply because Chez Sidney asserted a statutory claim, rather than a constitutional claim" because "[t]here is little practical difference . . . between a claim that the ITC interpreted the [CDSOA] incorrectly as a matter of statutory construction and a claim that the ITC's construction of the [CDSOA] as applied to Giorgio was unconstitutional." *Id*. at 27.

　　*Chez Sidney III* is not controlling of the outcome of this case.  That decision did not overturn the decision in *SKF USA II*.  Nor did it rule on any issue concerning the constitutionality of the petition support requirement.  As the Court of Appeals made clear, the constitutional issues presented in *Chez Sidney III* were definitively resolved by *SKF USA II*, *Chez Sidney III*, 684 F.3d at 1379 n.3, and the decision rendered therein is strictly limited to a statutory challenge, *id*. at 1378-79.  No such statutory challenge is found in Giorgio's second amended complaint.  *See Giorgio II*, 35 CIT at __, 804 F. Supp. 2d at 1321-22.  Plaintiff's assertion that there is "little practical difference" between a constitutional and statutory challenge to the CDSOA thus ignores the explicit pronouncement of the Court of Appeals concerning the

---

　　　　[13] Plaintiff also argues that in *Chez Sidney III*, the Court of Appeals for the Federal Circuit ("Court of Appeals") stated that the limiting construction "'effectively redefine[ed] [affected domestic producers] from 'interested parties in support of a petition' to 'interested parties in a petition.'" Pl.'s Opp'n to Defs.' and Def.-Intervenors' Mots. to Dismiss 23 (Mar. 1, 2013), ECF No. 200 (citing *PS Chez Sidney, L.L.C. v. United States*, 684 F.3d 1374, 1380 (Fed. Cir. 2012) ("*Chez Sidney III*")).  However, the Court of Appeals made this statement in reference to this Court's decision in *SKF USA Inc. v. United States*, 30 CIT 1433, 1446, 451 F. Supp. 2d 1355, 1366 (2006), which was reversed by *SKF USA, Inc. v. United States*, 556 F.3d 1337, 1360 (Fed. Cir. 2009) ("*SKF USA II*").  The court, therefore, dismisses this misguided argument.

scope of *Chez Sidney III*.  Neither the holding nor the analysis of *Chez Sidney III* makes viable

Giorgio's as-applied constitutional challenges to the CDSOA.

> In summary, plaintiff has failed to allege facts sufficient to demonstrate that its

constitutional claims are not foreclosed by the binding precedent of *SKF USA III*.  As to these

claims, therefore, the second amended complaint does not "contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 662

(citation omitted).  The court must dismiss these claims pursuant to USCIT Rule 12(b)(5).

### B.  The Court Lacks Subject Matter Jurisdiction over Plaintiff's Unjust Enrichment Claims

> Subject matter jurisdiction is a threshold issue, *Steel Co. v. Citizens for Better*

*Environment*, 523 U.S. 83, 94-95 (1998), and plaintiff carries the burden of demonstrating that

its assertion of subject matter jurisdiction is proper, *McNutt v. General Motors Acceptance*

*Corp.*, 298 U.S. 178, 189 (1936).  In ruling on a motion to dismiss for lack of subject matter

jurisdiction, the "court must accept as true all undisputed facts asserted in the plaintiff's

complaint and draw all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc.*

*v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citation omitted).

> Plaintiff claims that the three defendant-intervenors have been "unjustly enriched at the

expense of Giorgio as a result of the unconstitutional petition support requirement."  Second Am.

Compl. ¶ 108.  According to plaintiff, "Defendant-Intervenors have received . . . more than their

appropriate *pro rata* share of CDSOA disbursements under the mushroom antidumping orders,

including the portions of such disbursements that rightfully belong to Giorgio."  *Id.* ¶ 18.  As a

remedy, plaintiff seeks "to disgorge and make full restitution to Giorgio of Giorgio's lawful

share of all CDSOA disbursements [defendant-intervenors] have received . . . ."  *Id.* ¶ 109(e).

Plaintiff submits that the court possesses subject matter jurisdiction over this claim because it "falls within the [court's] supplemental jurisdiction . . . [as it] stems from and is directly related to Giorgio's claims against Defendant the United States in connection with its administration and enforcement of the CDSOA, as to which this Court has original jurisdiction, such that they form part of the same case or controversy." *Id.* ¶ 21 (citations omitted).  Plaintiff also submits that its unjust enrichment claims "raise[] complex jurisdictional issues involving not only the applicability of this Court of the federal supplemental jurisdiction statute . . . but also common law doctrines of ancillary, pendant, and pendant-party jurisdiction."  Pl.'s Opp'n 32 (citing *Thyssenkrupp Mexinox S.A. v. United States*, 33 CIT __, __, 616 F. Supp. 2d 1376, 1381-83 (2009); *Old Republic Ins. Co. v. United States*, 14 CIT 377, 382, 741 F. Supp. 1570, 1575 (1990)).

The court rejects plaintiff's argument on subject matter jurisdiction.  "Some statutory grant of authority is required" for this Court to entertain a direct claim by one private party against another, and this Court lacks statutory supplemental jurisdiction under 28 U.S.C. § 1367(a), which is limited to the district courts.  *Sioux Honey Assoc. v. Hartford Fire Insurance Co.*, 672 F.3d 1041, 1051-56 (Fed. Cir. 2012), *cert. denied* 133 S.Ct. 126 (2012).  Therefore, the court may not exercise jurisdiction over plaintiff's claims against the defendant-intervenors, and those claims must be dismissed according to USCIT Rule 12(b)(1).

### III. CONCLUSION

For the foregoing reasons, all of the claims in plaintiff's second amended complaint must be dismissed.  Plaintiff's as-applied constitutional claims brought under the First Amendment and Fifth Amendment equal protection guarantee are precluded by binding precedent and must be dismissed for failure to state a claim upon which relief can be granted under USCIT

Rule 12(b)(5).  The court lacks subject matter jurisdiction over plaintiff's unjust enrichment

claims, which therefore must be dismissed pursuant to USCIT Rule 12(b)(1).  Plaintiff twice has

amended its complaint, and the court sees no justification for allowing plaintiff to seek leave for

further amendment.  Therefore, the court shall enter judgment dismissing this action.


<u>/s/ Timothy C. Stanceu</u>
Timothy C. Stanceu
Judge


Dated:  March 6, 2013
          New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

**GIORGIO FOODS, INC.**,

               Plaintiff,

    v.

**UNITED STATES and UNITED STATES INTERNATIONAL TRADE COMMISSION**,

          Defendants,

    and

**L.K. BOWMAN COMPANY**, **MONTEREY MUSHROOMS, INC., and THE MUSHROOM COMPANY**,

         Defendant-intervenors.

**Before: Timothy C. Stanceu, Judge**

**Court No. 03-00286**

## <u>JUDGMENT</u>

Upon consideration of the Second Amended Complaint, the motion to dismiss for failure to state a claim upon which relief can be granted filed by defendant U.S. International Trade Commission, the motions to dismiss by for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction filed by defendant United States and defendant-intervenors L.K. Bowman Company, a division of Hanover Foods Corporation, Monterey Mushrooms, Inc., and The Mushroom Company, all other papers and proceedings herein, and in conformity with the court's Opinion issued this date, it is hereby

**ORDERED** that the motions to dismiss of defendants and defendant-intervenors be, and hereby are, granted; it is further

      **ORDERED** that plaintiff's First Amendment and Fifth Amendment equal protection claims be, and hereby are, dismissed for failure to state a claim upon which relief can be granted; it is further

      **ORDERED** that plaintiff's claims for unjust enrichment and restitution, be, and hereby are, dismissed for lack of subject matter jurisdiction; and it is further

      **ORDERED** that this action be, and hereby is, dismissed.

<u>/s/ Timothy C. Stanceu</u>
Timothy C. Stanceu
Judge

Dated: March 6, 2013
      New York, New York

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

       US mail
       Fax
       Hand
       Electronic Means
       (by email or CM/ECF)

Name of Counsel                        Signature of Counsel

Law Firm

Address

City, State, ZIP

Telephone Number

FAX Number

E-mail Address

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) because:

      The brief contains 13,467 words, excluding the parts of the brief exempted

      by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit

      Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because:

      The brief has been prepared in proportionally spaced typeface using

      Microsoft Word in Times New Roman 14-point font.

|  |  |
|---|---|
| April 18, 2014 | /s/ Sarah Brackney Arni |
| Date | Signature of counsel |
|  | Sarah Brackney Arni |
|  | Printed name of counsel |